GENERAL ELECTRIC COMPANY *vs*. COMMISSIONER OF REVENUE
(and two consolidated cases[1]).

Suffolk. January 6, 1988. — June 9, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Taxation*, Corporate excise, Corporation. *Statute*, Construction. *Administrative Law*, Agency's interpretation of regulation. *Words*, "Combined net income."

Three corporate taxpayers and their respective subsidiaries, which elected to file combined Massachusetts excise tax returns under G. L. c. 63, § 32B, were to proceed, first, by combining their net incomes, then adjusting that sum under G. L. c. 63, § 38(*a*), to arrive at the group's taxable net income and, last, were to apportion the group's taxable net income to Massachusetts by using a combined apportionment factor. [526-532]

Where, during proceedings before the Appellate Tax Board for abatement of excise taxes levied on certain corporate taxpayers who had elected to file combined Massachusetts tax returns under G. L. c. 63, § 32B, a long-time Department of Revenue employee submitted an affidavit stating his view that a certain practice of the Commissioner of Revenue had been consistently followed from 1959 until the date of the affidavit, the board was correct in not according "great weight" to the affidavit, which tended merely to show adherence to an unpublished administrative practice that was not contemporaneous with the original statutory enactment or any relevant amendments, and that is contrary to the legislative history and the fundamental principles of combined return taxation. [532]

APPEALS from decisions of the Appellate Tax Board.

The Supreme Judicial Court granted requests for direct appellate review.

---

[1] The United States Shoe Corporation and U.S. Specialty Retailing, Inc. *vs*. Commissioner of Revenue; and CDE, Inc., Benjamin Smelting & Co., Beacon Hill Theatre, Inc., Boston Music Hall, Inc., Capri Theatre, Inc., Fitchburg Theatre Corp., Gary Theatre, Inc., Sack Cheri, Inc., Sack Cheri II, Inc., Sack Cheri III, Inc., Savoy II, Inc., Saxon Distribution Corp., Saxon Theatre Corp. of Boston, Saxony Theatres, Inc. *vs*. Commissioner of Revenue.

*Jane S. Schacter*, Assistant Attorney General, for the Commissioner of Revenue.

*Kenneth A. Cohen* for CDE, Inc. & others.

*Edward F. Hines, Jr.* (*Stephen G. Hennessy* with him) for General Electric Company & others.

O'CONNOR, J.   These three consolidated cases present the following question: Should corporate taxpayers who elect to file a combined Massachusetts tax return under G. L. c. 63, § 32B, first combine their net incomes, then adjust that sum under G. L. c. 63, § 38 (*a*), to arrive at the group's taxable net income and, lastly, apportion the group's taxable net income to Massachusetts by using a combined apportionment factor, or should they first separately determine and apportion the taxable net income of each affiliated corporation, and then combine those sums to arrive at the group's income taxable in Massachusetts? In each case, favorably to the taxpayers, the Appellate Tax Board concluded that combination of net income should precede apportionment. The Commissioner appealed, and we granted direct appellate review. We now affirm the decision of the Appellate Tax Board in each case.

General Laws c. 63, § 32, imposes on domestic corporations an excise which is the sum of two separate measures; a property measure and an income measure. Section 39 imposes a similar excise on foreign corporations. In calculating the income measure of the excise assessed under §§ 32 and 39, a corporation first reduces its "Net income," as defined in § 30 (5) (*b*), to "taxable net income" pursuant to § 38 (*a*). It then apportions the proper share of its taxable net income to Massachusetts pursuant to § 38 (*b*)-(*j*). See §§ 38A and 42A.

Under G. L. c. 63, § 32B, inserted by St. 1973, c. 927, § 2, if corporations participate in the filing of a consolidated Federal income tax return, "the net income measure of their excises imposed under section thirty-two or section thirty-nine may, at their option, be assessed upon their combined net income, in which case the excise shall be assessed to all said corporations and collected from any one or more of them." The taxpayers assert, and the Board agrees, that corporations which elect to file a combined Massachusetts return under § 32B

should combine each individual corporation's net income, reduce it to taxable net income, and then apportion that combined amount to Massachusetts pursuant to § 38. The Commissioner asserts that each corporation should determine its own taxable net income and then apportion it to Massachusetts. According to the Commissioner, the resulting apportioned taxable net incomes of the several corporations are then combined.

The facts in these cases are not in dispute. The United States Shoe Corporation (U.S. Shoe) is an Ohio corporation that was qualified to do business in Massachusetts in the fiscal year ending July 31, 1976. U.S. Specialty Retailing, Inc. (Specialty Retailing), also an Ohio corporation, was a wholly-owned subsidiary of U.S. Shoe during that fiscal year and was qualified to do business in Massachusetts. U.S. Shoe and Specialty Retailing participated in the filing of a consolidated Federal tax return for that fiscal year.

After filing separate Massachusetts corporate excise returns, and paying the amount due according to those returns, $145,602, U.S. Shoe and Specialty Retailing elected to amend their separately filed returns by filing a combined Massachusetts corporate excise return. The taxpayers calculated the net income measure of the corporate excise by combining their net incomes, reducing combined net income to combined taxable net income, and then apportioning that amount to Massachusetts. This method of calculating the tax showed a total corporate excise of $126,474. The two corporations sought an abatement of $19,128 plus interest, which represented the difference between the total excises paid and the amount shown as due on their combined return. The Commissioner denied the application on the ground that "combined net income" taxable in Massachusetts is determined by first separately determining and apportioning the Massachusetts taxable net income of each affiliated corporation and then combining the separately apportioned net incomes of all the affiliated corporations. On appeal, the Board awarded an abatement in the amount of $19,128.

CDE, Inc., is a Connecticut corporation that did business in Massachusetts in 1975. CDE and thirteen Massachusetts

subsidiaries participated in the filing of a consolidated Federal return for that calendar year. They elected to file a combined Massachusetts corporate excise return for 1975, calculating the net income measure of the excise by combining the net income of CDE and its subsidiaries, reducing net income to taxable net income, and apportioning that sum to Massachusetts. The combined return showed a total corporate excise owing to Massachusetts of $64,764, which was paid. The Commissioner sent CDE a notice of assessment of additional excise, based in part on the recomputation of "combined net income" utilizing the Commissioner's method of apportionment preceding combination. An application for abatement was denied in so far as it was based on the taxpayers' method of computing "combined net income." On appeal, the Board awarded the taxpayers an abatement in the amount of $86,199.29.

General Electric Company (G.E.) is a New York corporation which was qualified to do business as a foreign corporation in Massachusetts during the fiscal year ending December 31, 1973. During that fiscal year, G.E. owned all the stock of seven subsidiary corporations qualified to do business in Massachusetts as foreign corporations. G.E. and these subsidiaries participated in the filing of a consolidated Federal income tax return, and then filed a combined Massachusetts corporate excise tax return for that fiscal year. The taxpayers combined their taxable net incomes prior to apportionment. Under this method, the aggregate excise liability of G.E. and its subsidiaries amounted to $3,936,874.14, which was paid in full. Thereafter, G.E. received a notice of assessment of additional excise in the amount of $18,540.33 plus interest. The basis of the additional assessment was the same as in the other cases. G.E. filed a timely application for abatement, which the Commissioner denied. On appeal, the Board awarded G.E. an abatement in the amount of $18,540.33.

General Laws c. 63, § 32B, provides that the "net income measure of [the participating corporations'] excises . . . may . . . be assessed upon their combined net income . . . ." The term "combined net income" suggests that the Legislature in-

tended that corporations electing to utilize a consolidated return should combine their net incomes, not their apportioned net incomes. The language itself of § 32B, therefore, although not conclusive, supports the Board's view since it is only under the Board's view that the net income of the affiliated corporations will be combined. Under the Commissioner's view, it is the apportioned, taxable net income of each corporation that is combined.

More persuasive than the statutory language itself are the principles underlying combined returns, as well as the legislative history of § 32B. *State Tax Comm'n* v. *La Touraine Coffee Co.*, 361 Mass. 773 (1972), makes it clear that the basic principle underlying a consolidated net income return is the treatment of the corporations involved as a single entity. In that case, we were faced with the question whether an intercompany dividend paid by one corporation to another corporation, both of which corporations were included in a Massachusetts consolidated income tax return, had to be counted in the "combined net income" of the group. In holding that it did not, we said, "The purpose of consolidated financial statements is to reflect the financial condition of a parent corporation and its subsidiaries *as if they were a single organization*" (emphasis added). *Id.* at 779, quoting Hills, Accounting and Financial Statements § 1.9, at 36-39 (1957).

Similarly, in *Walter Kidde & Co.* v. *Commissioner of Revenue*, 389 Mass. 577 (1983), we once again treated corporations electing to file a combined return under § 32B as a single entity over the objections of the Commissioner. In that case, we allowed an investment credit claimed by one of the corporations to offset the total excise due under the combined return, even though the credit due that corporation exceeded what would have been its own excise liability had it filed a separate return. We rejected the Commissioner's attempt to narrow the scope of the single entity theory as applied to that case. *Id.* at 580.

A single corporation would, of course, first combine the net income of its divisions before apportionment to Massachusetts. There is no question, therefore, that if we are to treat corpora-

tions electing to file a § 32B combined return as a single entity, in accordance with the basic concept underlying combined returns, it is the Board's view which must prevail in this case rather than the Commissioner's.

Furthermore, the legislative history of § 32B demonstrates that the Legislature intended that combination should precede apportionment under § 32B and its predecessors. Under St. 1919, c. 355, §§ 2 & 15, the forerunners of § 32B, either two or more domestic corporations, or two or more foreign corporations,[2] that participated in filing a consolidated Federal return, were allowed to have the net income measure of the Massachusetts corporate excise assessed upon their combined net incomes. However, those sections also required such corporations to file separate Massachusetts income statements for each corporation. See also St. 1920, c. 549, § 1. In its Report to the General Court, the Joint Special Committee on Consolidating and Arranging the General Laws found "manifest errors" and "ambiguity" in those provisions, and recommended the adoption of G. L. c. 63, §§ 34 and 39, as proposed by the committee. Notes to G. L. c. 63, §§ 34 and 39, 1 Report to the General Court of the Joint Committee on Consolidating and Arranging the General Laws, at 556-557 (1920). Sections 34 and 39 were adopted exactly as proposed by the Committee. See G. L. c. 63, §§ 34 & 39 (1921 ed.).

The revisions proposed by the Committee and incorporated in G. L. c. 63, §§ 34 and 39 (1921 ed.), made it clear that a group consisting solely of either foreign or domestic corporations which filed a consolidated Federal tax return, and which elected to be assessed upon the group's combined net income in Massachusetts, did not have to file separate Massachusetts income statements. The committee's Notes to section 39, *supra* at 556, explain that "[t]he reason for permitting corporations making a combined federal return to be assessed upon their

---

[2] Prior to the 1973 enactment of § 32B, groups of affiliated corporate taxpayers could file a combined Massachusetts return only if the entire Massachusetts group consisted solely of domestic corporations or solely of foreign corporations. See 1972 House Doc. No. 267, at 7; 1973 House Doc. No. 280.

combined income is to save the labor of making a separate return. This object is defeated if we require them to make separate income statements to Massachusetts *in cases where the federal return gives the combined income*" (emphasis added). The Federal combined net income figure, however, obviously included income not apportioned to Massachusetts. Since the Federal return was to be used to supply the Massachusetts combined net income figure, the inescapable inference is that "combined net income" meant net income combined *prior* to apportionment.

While conceding the force of this historical evidence, the Commissioner argues that the phrase "combined net income" should be interpreted differently today than was appropriate in 1921. He relies on the fact that prior to 1933 a group of either domestic or foreign corporations could file a Massachusetts combined return only if they also constituted the entire group participating in the consolidated Federal return. See *Felt Process Co.* v. *State Tax Comm'n*, 339 Mass. 651, 652-654 (1959). However, he contends, it is significant that St. 1933, c. 327, §§ 4 and 6, amending G. L. c. 63, §§ 34 and 39 (Ter. Ed.),[3] allowed members of a consolidated Federal group to file a combined Massachusetts return even if the Massachusetts group was a smaller subset of the Federal group. See *Felt Process Co.*, *supra* at 653-654.

The Commissioner argues that those 1933 amendments obviated the need for combination to precede apportionment. He reasons that the original statutory purpose, as expressed in the 1920 report, was to allow those corporate taxpayers filing a combined State return to take the combined income figure straight from the Federal return; to do so required that combination necessarily precede apportionment. Because, under the 1933 amendments, the Federal combined income figure would not be identical with State "combined net income" whenever the State group is smaller than the Federal group, regardless of how the State figure is calculated, he argues that there is

---

[3] General Laws c. 63, §§ 34 & 39 (Ter. Ed.), were identical in all material respects with G. L. c. 63, §§ 34 & 39 (1921 ed.).

no reason to interpret "combined net income" in the same way as it was interpreted prior to the amendments.

We disagree. First, even after the 1933 amendments, the taxpayers' method of computation will still reflect the original legislative purpose whenever the Federal group and the State group are the same; the Commissioner's method will not. Nor is there any warrant for reading the statute as implying one method of computation when the Federal and State groups are the same, and another method of computation when the Federal group is larger. Furthermore, the Commissioner's argument at most shows that the Legislature had a possible reason to change the method of computation, but there is no evidence whatsoever indicating an actual legislative intent to do so. "When statutory language is reenacted, it is a principle of statutory construction that no change was intended in its meaning or scope." *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxation*, 363 Mass. 685, 691 (1973). The Commissioner does not point to any subsequent legislation indicating a legislative desire to change the method of calculating "combined net income." The phrase "combined net income," therefore, as used in § 32B, must be interpreted as meaning net income combined prior to apportionment.

The Commissioner does not persuade us that his position is advanced by G. L. c. 63, § 38 (*i*), as appearing in St. 1966, c. 698, § 58, which states that "[i]n the case of consolidated returns of net income, the commissioner shall apportion the taxable net income, so far as practicable, in accordance with apportionment rules set forth in this section." That section certainly does not give the Commissioner discretion to determine the proper order of combination and apportionment. Rather, the statute *requires* the Commissioner to apply the § 38 apportionment rules to consolidated returns unless application of the rules is impracticable. The Commissioner has not contended that application of the § 38 rules in these cases is impracticable. The apportionment method indorsed by the Board treats the affiliated corporations as a single enterprise, and utilizes the ratio of the enterprise's Massachusetts property, payroll, and sales values to its over-all property, payroll, and

sales values. This method is in accordance with the § 38 apportionment rules, and with the principle of treating corporations filing a combined return as a single unit.

It is also worth noting that the phrase "consolidated returns of net income" in § 38 (*i*) is at least suggestive that it is net income, and not apportioned net income, that is consolidated; and is "*the* taxable net income" (emphasis added) that § 38 (*i*) requires the Commissioner to apportion, thus suggesting a single taxable net income figure for the entire group.

The Commissioner argues that allowing corporations which file consolidated returns to combine their net income prior to apportionment will result in distorted apportionment. In particular, the Commissioner argues that if one of the corporations has a large loss primarily attributable to another State, while a second corporation has a large profit mostly attributable to Massachusetts, allowing combination prior to apportionment allows the loss primarily attributable to out-of-State operations to wipe out the gain primarily attributable to Massachusetts.

However, what the Commissioner calls a "distortion" is merely a consequence of allowing related corporations to be treated as a single entity. Just as a single corporation, in calculating its "net income," combines losses attributable to out-of-State operations with gains attributable to Massachusetts, so too may related corporations choose to treat themselves as divisions of the same corporation. See *State Tax Comm'n* v. *La Touraine Coffee Co.*, 361 Mass. 773, 779 (1972). And while the Commissioner is correct in asserting that affiliated corporations are better off than a single corporation, since § 32B allows them to file separately when advantageous to do so, his quarrel appears to be with the clear legislative intent embodied in § 32B to grant affiliated corporations precisely that choice.

The same holds true regarding the Commissioner's objection to treating the group filing a Massachusetts return as a single entity when that group is a smaller subset of the group filing a consolidated Federal return. The Commissioner argues that such treatment is illogical because, when the Federal group is larger, the Massachusetts group is not, in fact, a single business

entity, but rather a part of a single entity. However, aside from the fact that the same objection can often be made regarding the Federal group as well, which excludes foreign (non-U.S.) corporations as well as others, see 26 U.S.C. § 1504(b)(3) (1982), the Commissioner's quarrel is really with the 1933 amendments that allowed a subset of a Federal group to file a combined group return in Massachusetts. See *Felt Process Co.* v. *State Tax Comm'n,* 339 Mass. 651, 653-654 (1959). The Commissioner's concerns about revenue loss are also appropriately directed to the Legislature; it is worth noting, however, that the allegedly "distorted" apportionment produced by the Board's method can lead to higher taxes than the Commissioner's method when it is out-of-State gains, rather than losses, that are being "imported." An example of this, taken from the brief of CDE, is provided in Appendix A of this opinion.

Finally, we reject the suggestion that the Board did not give sufficient weight to the affidavit of Nicholas Metaxas, which was before the Board in the United Shoe and CDE cases only. Metaxas, a Department of Revenue employee since 1959, stated that, to the best of his knowledge, the consistent practice of the Commissioner from 1959 to the 1985 date of the affidavit has been to require apportionment prior to combination. Even assuming that Metaxas's affidavit is viewed as conclusively establishing the Commissioner's post-1958 administrative practice, the board was correct in not according "great weight" to unpublished administrative practice that was not contemporaneous with the original statutory enactment or any relevant amendments, and that is contrary to the legislative history and the fundamental principles of combined return taxation. See *Polaroid Corp.* v. *Commissioner of Revenue,* 393 Mass. 490, 497 (1984); *Xtra, Inc.* v. *Commissioner of Revenue,* 380 Mass. 277, 282-283 (1980).[4]

> *Decision of the Appellate Tax*
> *Board in each case affirmed.*

---

[4] The Commissioner did not publicly adopt the position taken in this litigation until a 1979 letter ruling, No. 1979-42, issued several years after the tax years in question. He does not contend that insufficient deference was accorded the ruling. See *Polaroid Corp.* v. *Commissioner of Revenue, supra* at 496-497.

General Electric Co. *v.* Commissioner of Revenue.

APPENDIX A.

Parent Corporation
$1,500,000 net income
(50% Massachusetts apportionment)

Massachusetts Subsidiary
($1,000,000) loss
(100% Massachusetts Apportionment)

| Commissioner's Method | Board's Method |
|---|---|
| Parent Corp. apportions net income of $750,000 to Mass., offset by ($1,000,000) loss of Mass. Sub. | Combine $1,500,000 net income of Parent Corp. and ($1,000,000) loss of Mass. Sub., which produces net income of $500,000; then apply apportionment factor* |
| Result: Net Loss to Mass. of ($250,000); no tax paid on income | Result: Mass. tax paid on Net Income of $375,000 |

Separate
Filing

Parent Corp. pays Mass. tax
on $750,000 net income. Sub.
has ($1,000,000) loss and
pays no Mass. tax

Result: Mass. tax paid on net
income of $750,000

On these facts, the taxpayers would prefer the Commissioner's method over the Board's method and would elect either of those methods instead of filing separately.

*Combined apportionment factor assumed to be 75%.