## Farrell Enterprises, Inc. *vs.* Commissioner of Revenue.

No. 97-P-1642.

Suffolk. January 15, 1999. - March 30, 1999.

Present: Kass, Gillerman, & Laurence, JJ.

*Taxation,* Corporation, Corporate excise, Abatement, Deduction from income, Apportionment of tax burden. *Statute,* Construction. *Administrative Law,* Agency's interpretation of regulation.

Discussion of G. L. c. 63, § 32B, as amended by St. 1988, c. 202, § 15, and the method of determining the net income of a corporate group filing a combined corporate excise tax return. [566-568]

The Appellate Tax Board correctly concluded that a holding company could not carry forward the net operating losses of three subsidiaries incurred in tax years prior to 1991, to offset the combined net income of the group on its 1991 combined corporate excise tax return filed under G. L. c. 63, § 32B, as amended by St. 1988, c. 202, § 15, where those subsidiaries reported no taxable Massachusetts income in 1991, and where the statute and applicable regulations provide that net operating losses may be carried forward only by the corporation that incurred the loss. [568-573]

Appeal from a decision of the Appellate Tax Board.

*David R. Sullivan (Jeremy Ritzenberg* with him) for the taxpayer.

*Edward J. DeAngelo,* Assistant Attorney General, for the Commissioner of Revenue.

Gillerman, J. Farrell Enterprises, Inc. (Farrell), a holding company,[1] appeals from the refusal of the Commissioner of Revenue (commissioner) to abate, in part, its 1991 corporate excise tax that was assessed under G. L. c. 63, § 39, for the year 1991. The single issue on appeal is whether the net operating losses incurred in taxable years *prior* to 1991 by three

---

[1]Farrell owns all or substantially all of the outstanding capital stock of six subsidiaries: Farrell Dock & Terminal, Inc.; Farrell Ocean Services, Inc; Farrell Ocean Services of Boston; Kelco Metals Servicenter, Inc.; McKie Company; and Morse Diving Equipment Company, Inc.

members of the corporate group consisting of Farrell and its six subsidiaries may be carried forward to offset the income of the group as a whole, where the three members in question reported no taxable Massachusetts income in 1991. Both the commissioner and the Appellate Tax Board (board) determined that Farrell could not apply the unused net operating losses incurred by its three subsidiaries to offset the group's combined net income.

*Background.* The material facts are not in dispute. Farrell and its subsidiaries have filed Federal consolidated income tax returns and Massachusetts combined excise returns since 1975. For the purpose of apportionment, the parties have stipulated that one hundred per cent of the income of each of the corporations is Massachusetts source income.

Three of Farrell's subsidiaries, Kelco Metals Servicenter, Inc. (Kelco), McKie Company (McKie) and Morse Diving Equipment Company, Inc. (Morse), had no taxable Massachusetts income for the 1991 tax year. However, each of these subsidiaries had a net operating loss (NOL) carry forward[2] that was attributable to the years 1989 and 1990.[3]

On September 15, 1992, Farrell filed a 1991 Massachusetts combined excise return with the commissioner. On this original return, neither Farrell nor any of its subsidiaries claimed a deduction for any NOL attributable to the losses of Kelco, McKie, or Morse. The original return stated that the group's combined income was $420,655. Farrell reported a total excise due in the amount of $39,506.[4] It also reported interest due on the unpaid balance in the amount of $5,046. No payment was made with this return.

On February 17, 1993, Farrell filed an amended 1991 Massachusetts combined excise return. On the amended return, Farrell applied the unused NOL of its three subsidiaries to offset the income of the profitable subsidiaries in the combined group. On that basis, Farrell reported that the group's combined net

---

[2]The availability of net operating losses as a deduction is limited to a percentage of the net income of the taxpayer, and net operating losses may be carried forward by the taxpayer for not more than five years, and may not be carried back. See now G. L. c. 63, § 30(5)(*b*); for 1991, provisions were found at G. L. c. 63, § 30(5)(*b*)(ii).

[3]The total amounts of the NOLs incurred by each subsidiary for the years 1989 and 1990 are as follows: (1) Kelco — $132,218; (2) McKie — $157,425; and (3) Morse — $348,582.

[4]The actual excise of $39,962 was reduced by an estimated payment in the amount of $456.

income now totaled $52,766. Farrell reported a total excise due in the amount of $5,013, and it determined that interest was due on the unpaid balance in the amount of $820. No payment was made with the amended return.

On May 17, 1993, Farrell filed an application for abatement with the commissioner seeking an abatement of taxes in the amount of $34,949. This amount reflected the difference between the excise reported as due on Farrell's original return and the excise shown due on its amended return. The commissioner denied the application on October 26, 1993. Farrell appealed the decision to the board. On September 25, 1995, the board affirmed the commissioner's denial of the abatement. It subsequently issued a written decision on June 25, 1997.

*The controversy.* If two or more corporations participate in the filing of a Federal consolidated income tax return,[5] those corporations may, under the provisions of G. L. c. 63, § 32B, elect to calculate their Massachusetts corporate excise tax based upon their "combined net income." If two or more corporations choose to file a combined return, the excise is assessed to all of the corporations and may be collected from any one or more of them. *Ibid.* Farrell and its subsidiaries elected to file a Massachusetts combined tax return for the year 1991.

At issue is the proper calculation of the group's "combined net income" for the purpose of assessing the group's corporate excise tax. The commissioner argues that a NOL carry forward may be deducted only from the income of that group member which generated the carry forward. If the commissioner's argument is followed, the unused NOL of each of the three unprofitable subsidiaries would not be available to offset the taxable income of Farrell's three profitable subsidiaries.

Farrell argues that the income of each of the individual members must be combined prior to the deduction of any NOL carry forward. If Farrell's argument is followed, the NOL carry forward of each of the three subsidiaries would be available to offset the taxable income of the profitable members of the group. In other words, Farrell's argument is to treat the group as a single taxable entity, with the tax attributes of each member available to the members as a group.

*Discussion of G. L. c. 63, § 32B.* General Laws c. 63, § 32B

_____

[5]It is not disputed that Farrell and its subsidiaries meet the requirements for the filing of a consolidated Federal tax return. See 26 U.S.C. § 1504 (1988 & Supp. 1991).

— the statutory provision which governs this dispute — was introduced by St. 1973, c. 927, § 2. Originally § 32B provided as follows:

> "If two or more domestic business corporations or foreign corporations participated in the filing of a consolidated return of income to the federal government, the net income measure of their excises imposed under section thirty-two or section thirty-nine may, at their option, be assessed upon their combined net income, in which case the excise shall be assessed to all said corporations and collected from any one or more of them."

Section 32B was amended by St. 1988, c. 202, § 15,[6] which added the second and third paragraphs now appearing in § 32B, including, for the first time, the following provision regarding the method of calculating a corporate group's "combined net income":

> "The combined net income shall be determined as follows: (*a*) the taxable net income of each such corporation apportioned to this commonwealth . . . *shall first be separately determined*; and (*b*) the taxable net income of each such corporation, as so determined, *shall then be added together* and shall constitute their combined net income taxable under this chapter" (emphasis added).

Section 32B requires that the determination of a group's combined net income proceed in the following sequence.

First, the taxable net income of each group member must be "separately determined." Section 32B, par. second (*a*). The computation of an individual member's taxable net income begins with a calculation of its gross income as defined in G. L. c. 63, § 30(3), as amended by St. 1992, c. 133, §§ 400, 595.[7] See *PMAG, Inc.* v. *Commissioner of Rev.*, 429 Mass. 35, 39 (1999) ("[t]he starting point for calculating the corporate excise tax in Massachusetts is Federal gross income"). Once a corporation's gross income is determined, its "net income"

---

[6]This amendment was approved July 26, 1988, and was signed on the same date with an emergency preamble by the Governor. The amendment applies to taxable years ending on or after December 31, 1988. See St. 1988, c. 202, § 32.

[7]In 1991, the same definition of gross income was found at G. L. c. 63, § 30(5)(*a*) (1990).

must then be calculated. Net income is defined in G. L. c. 63, § 30(4), as amended by St. 1992, c. 133, §§ 401, 595,[8] as "gross income less the deductions, but not credits, allowable under the provisions of the Federal Internal Revenue Code." It is at this point that NOL carry forwards are factored into the computation. NOL carry forwards are considered to be deductions pursuant to G. L. c. 63, § 30(5)(b), as amended by St. 1992, c. 133, §§ 403, 595; such losses may be carried forward for not more than five years, and may not be carried back.[9]

When all of a corporation's deductions have been subtracted, thereby determining its net income, its "taxable net income" is then calculated by making certain adjustments as set forth in G. L. c. 63, § 38(a). The corporation's taxable net income must then be apportioned by determining the amount of income derived from business that is taxable within Massachusetts and the amount of income derived from business that is taxable in other states. See G. L. c. 63, § 38(b) — (j).[10] This process is repeated for each member of the corporate group.

Then, as set forth in § 32B, par. second (b), the apportioned, taxable net incomes of all of the individual members are merely "added together" to determine the group's combined taxable net income. In sum, the calculation of combined taxable net income of a corporate group under § 32 requires a simple mathematical addition of the apportioned, taxable net incomes of the individual members, and the "plain language" of the statute must be followed. *Commissioner of Rev. v. Cargill, Inc.*, 429 Mass. 79, 82 (1999).[11]

*Farrell's authorities.* Farrell argues that interpreting § 32B in

---

[8]In 1991, the same definition of net income was found at G. L. c. 63, § 30(5)(b) (1990).

[9]In 1991, a substantively similar provision was found at G. L. c. 63, § 30(5)(b)(ii) (1990).

[10]After apportionment, each profitable member of the group, in calculating its net income, is entitled to deduct its share of any loss realized in the taxable year of any other member of the group. The loss is shared among the group members that have a positive taxable net income in proportion to the amount of income that each such member contributes to the combined net income of the group. See 830 Code Mass. Regs. § 63.32B.1(7)(d) (1993). See note 12, *infra.*

[11]Obviously, the combined net income of a qualifying group bears no relationship to a consolidated financial statement prepared in accordance with generally accepted accounting principles. For example, consolidated financial statements do not include gain or loss on transactions among the members of the group, and any intercompany profit or loss on assets remaining within the

the manner just described is inconsistent with the legislative purpose of permitting combined tax returns, namely, to treat all the group members as if they were one entity. Because a combined group is to be viewed as a single entity, the argument continues, § 32B must be construed in a manner which allows the group as a whole to utilize the NOL carry forwards of its members. Farrell cites to a number of cases, including *General Elec. Co.* v. *Commissioner of Rev.*, 402 Mass. 523 (1988); *Walter Kidde & Co.* v. *Commissioner of Rev.*, 389 Mass. 577 (1983); and *State Tax Commn.* v. *La Touraine Coffee Co.*, 361 Mass. 773 (1972). None supports its position.

The issue decided in *General Electric*, the most recent case cited by Farrell, was whether the apportionment of income to Massachusetts should occur before or after the combination of the net incomes of the members of a combined group. In ruling on this question, the court stated that "[t]he purpose of consolidated financial statements is to reflect the financial condition of a parent corporation and its subsidiaries *as if they were a single organization*." 402 Mass. at 527 (emphasis in original), quoting from *State Tax Commn.* v. *La Touraine Coffee Co.*, 361 Mass. at 779. Applying this construct, the language of § 32B, in effect at that time, and the legislative history of § 32B, the court held that apportionment should take place *after* the net incomes of the members are combined. Similarly, Farrell contends that the deduction of NOL carry forwards should also occur after the combination of the group members' incomes.

Although Farrell correctly states the holding in *General Electric*, that case, and all other cases which Farrell relies on, were decided prior to the 1988 amendment to G. L. c. 63, § 32B. When the *General Electric* decision was released on June 9, 1988 (approximately forty-five days prior to the effective date of the amendment of § 32B, see note 6, *supra*), § 32B contained no explicit language regarding the method of calculating a group's combined taxable net income. Section 32B, as amended, calls for the determination of combined taxable net income *after* deducting from the net income of each member

group is eliminated. See Current Text promulgated by the Financial Accounting Standards Board, C51.109, at 7875 (1996). It is significant to the discussion in the text that "consolidated statements are based on the assumption that they represent the financial position and operating results of a single business enterprise." *Ibid.* Section 32B does not, in our opinion, proceed on that assumption, and we reject Farrell's argument that it does.

any available NOL. The introduction of the § 32B method of calculating "combined net income" of a corporate group after July 26, 1988, leaves no room for the *General Electric* construct of a "single organization."[12] See *Morrison* v. *Lennett*, 415 Mass. 857, 863 (1993) ("[i]t can be assumed that new legislation alters existing law").

Farrell argues further that the amendment to § 32B was intended solely to reverse the narrow holding in *General Electric* regarding the timing of apportionment and that it has no application to the deduction of NOL carry forwards. We disagree. Chapter 63, as we have seen, sets forth a comprehensive procedure for determining combined net income. The amendment to § 32B establishes that it is only when this process is completed that the sums may be combined to arrive at the group's combined net income. Thus, the scope of the amendment to § 32B is broader than that suggested by Farrell; it is not limited merely to changing the timing of apportionment in the calculation of combined net income. See *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534, 539 (1996), cert. denied, 520 U.S. 1131 (1997) ("[w]e must construe the statutes as they are written," quoting from *Brennan* v. *Election Commrs. of Boston*, 423 Mass. 784, 789 [1942]).

Farrell also cites to *Walter Kidde & Co.* v. *Commissioner of Rev.*, 389 Mass. 577, in support of its claim for abatement. In *Walter Kidde & Co.*, corporations that had elected to file a combined return under § 32B were treated as a single entity. That is to say, the court allowed an investment credit claimed by one of the corporations under G. L. c. 63, § 31A(*a*), to offset the total excise due from the group under the combined return, even though the credit due that corporation exceeded what would have been its own excise liability had it filed a separate tax return. *Id.* at 580.

At the same time that G. L. c. 63, § 32B, was amended in 1988, the investment credit statute involved in *Walter Kidde & Co.*, G. L. c. 63, § 31A, was also amended by the enactment of St. 1988, c. 202, § 13. The amendment added paragraph (*h*) to § 31A which reads as follows:

---

[12]See 830 Code Mass. Regs. § 63.32B.1(7)(b) (1996): "[C]orporations that filed combined returns in taxable years ending before December 31, 1988, and that calculated their combined net income by the method determined in *General Electric Company* v. *Commissioner of Revenue*, 402 Mass. 523 (1988), were required to employ adjustments and eliminations for intercompany transactions." See note 11, *supra*.

"Any corporation entitled to a credit for any taxable year under this section shall apply it only to its excise for any of the eligible taxable years. *Such credit may not be applied against the excise liability of any other corporation pursuant to an election under the provisions of section thirty-two B.*" (Emphasis added.)

This amendment reversed the holding in *Walter Kidde & Co.* by prohibiting the use of investment credits by any corporation other than the one that generated the credit. Thus, contrary to Farrell's assertions, the enactment of St. 1988, c. 202, §§ 13 (regarding investment credits) and 15 (regarding the calculation of combined net income of a corporate group), displays a general legislative intent to treat members of a corporate group filing a combined return as *separate* entities, whose taxable net incomes are merely "added together" to yield a combined net income. See note 10, *supra.*

The regulations enacted by the commissioner regarding the calculation of combined net income are consistent with the provisions of § 32B. Specifically, 830 Code Mass. Regs. § 63.32B.1(9)(a) provides:

> "*Net operating losses, to the extent that they maybe [sic] carried from year to year and used under Massachusetts law, are deductions taken by individual corporations in calculating their net incomes under M. G. L. c. 63, § 30(5)(b).* NOL therefore affects whether a member corporation has a loss (i.e. a negative net income and taxable net income) in a taxable year which, after apportionment, may offset income of other group members under the provisions of 830 C.M.R. [§] 63.32B.1(7). *Because NOL is a deduction taken by an individual corporation in calculating its individual net income, NOL is carried from year to year separately by each combined group member, not by the group as a whole.*" (Emphases added.)[13]

Similar language is contained in 830 Code Mass. Regs. § 63.32B.1(9)(c)(1) (1993), which states that "[a]ny unexpired NOL in excess of the amount permitted to be deducted must be

---

[13]At oral argument, the parties stipulated that the regulations regarding combined net income have not substantively changed from the dates in issue to the present. Thus, we cite to the current regulations.

carried over by the individual corporation to the following taxable year."[14]

Generally, we accord such regulations the same deference we extend to statutes. See *American Family Life Assur. Co. v. Commissioner of Ins.*, 388 Mass. 468, 477, cert. denied, 464 U.S. 850 (1983); *Massachusetts Eye & Ear Infirmary v. Commissioner of the Div. of Med. Assistance*, 428 Mass. 805, 813 (1999). This means we "limit our determination to whether the State action is arbitrary, capricious, or contrary to law. To that end we apply all rational presumptions in favor of the validity of the administrative action." *Ibid.* (Citations omitted.) We see no arbitrary or capricious agency action.[15]

True, the Massachusetts statute and regulations regarding combined returns do not follow the Federal regulations regarding the filing of consolidated income tax returns which explicitly permit the NOL carry forwards of all of the members to be aggregated and made available in the calculation of a group's consolidated income. See 26 C.F.R. §§ 1.1502-11(a)(2) and 1.1502-21T (1998).[16] The commissioner concedes this point but argues correctly that Massachusetts is not required to follow Federal procedure with respect to this matter. See *Parker Affiliated Cos. v. Department of Rev.*, 382 Mass. 256, 263 (1981) ("[t]he determination to forbid the Federal treatment of loss is clearly within the taxing power and prerogative of the Legislature").[17]

*Conclusion.* The relevant statutes and regulations provide that

---

[14]Farrell focuses on 830 Code Mass. Regs. § 63.32B.1(9)(b) (1993) in arguing that the Massachusetts regulations allow the use of NOL carry forwards in the manner requested by the corporation. However, we see no disharmony on the face of subsections 1(9)(a), 1(9)(b), and 1(9)(c) that would require us to reach a different result.

[15]Furthermore, the party appealing an administrative decision bears the burden of demonstrating the decision's invalidity. *Coggin v. Massachusetts Parole Bd.*, 42 Mass. App. Ct. 584, 587 (1997). See *M & T Charters, Inc. v. Commissioner of Rev.*, 404 Mass. 137, 140 (1989) ("the taxpayer has the burden of proving as a matter of law its right to an abatement of the tax").

[16]The 1998 version of the Federal code is not materially different from that in effect in 1991.

[17]The intent to depart from the Federal treatment of a combined group as a single entity is indicated by 830 Code Mass. Regs. § 63.32B.1(7)(a)(1) (1996), which states:

a NOL carry forward is available only to the corporation that created the loss. Because Farrell's three subsidiaries had no income for the tax year 1991, the NOL carry forward of those three subsidiaries was unavailable to the group's combined tax return. The board correctly denied Farrell's application for abatement.

*Judgment affirmed.*

---

"(a) Each member of the combined group shall first separately determine its 'taxable net income,' as defined in M. G. L. c. 63, § 38(a), as if it were filing a separate return.

"1. Modifications to the separate taxable incomes of federal consolidated group members under Treas. § 1.1502-12, which generally include deferrals and eliminations for intercompany transactions, are not used when determining the Massachusetts net income of combined group members, even for transactions exclusively involving members of a Massachusetts group. The net income of each corporation should, if necessary, be adjusted to compensate for any such federal modifications."