NYNEX Corporation *vs.* Commissioner of Revenue.

No. 03-P-337.

Suffolk. March 18, 2004. - August 6, 2004.

Present: Lenk, Grasso, & Berry, JJ.

*Taxation,* Corporate excise, Abatement.

The Appellate Tax Board properly upheld the refusal of the defendant Commissioner of Revenue to abate an assessment of corporate excise tax to the taxpayer, which had elected to file a combined Massachusetts corporate excise tax return with thirteen of its subsidiaries and which sought to have the taxpayer group treated as a single entity such that carried over net operating losses (NOLs) incurred by six subsidiaries that were wholly owned by the taxpayer were NOLs of the taxpayer group and deductible in calculating the taxpayer group's combined taxable net income, where the subsidiaries were not eligible to deduct the NOLs themselves because they did not satisfy requirement of G. L. c. 63, § 30(5)(*b*)(ii), that they be less than fifty per cent owned by another corporation [577-578], and where the taxpayer was not able to deduct the NOLs incurred by the subsidiaries, because the term "combined net income" as used in G. L. c. 63, § 32B, meant that the net income of two or more corporations filing a combined return could be added together prior to being reduced to taxable net income and then apportioned, not that the gross income of a parent corporation and its subsidiaries could be combined as if they were a single organization [578-581].

Appeal from a decision of the Appellate Tax Board.

*Larry C. Kenna* (*Kathleen King Parker* with him) for the taxpayer.

*Daniel A. Shapiro* for Commissioner of Revenue.

Grasso J. NYNEX Corporation (NYNEX) and thirteen of its subsidiaries subject to tax in this Commonwealth (the taxpayer group) elected to file a combined Massachusetts corporate excise tax return for the tax year ending December 31, 1987 (the 1987 tax year). NYNEX now appeals from a decision of the Appellate Tax Board (board) upholding a refusal by the Commissioner of Revenue (commissioner) to abate the corporate excise

tax assessed to NYNEX under G. L. c. 63, § 39. NYNEX contends that the taxpayer group should have been treated as a single entity such that net operating losses (NOLs) incurred by six of the subsidiaries in the 1984 and 1986 tax years were NOLs of the taxpayer group and, therefore, deductible in calculating its combined taxable net income. We affirm.

*Background.* NYNEX was incorporated in December, 1983, as a Delaware corporation with its principal place of business in New York.[1] During the 1984, 1985, 1986, and 1987 tax years, NYNEX was not more than fifty per cent owned by another corporation, and the thirteen subsidiaries at issue were wholly owned by NYNEX. For the 1987 tax year, NYNEX filed a consolidated Federal income tax return pursuant to 26 U.S.C. § 1501 (1954) and a combined Massachusetts corporate excise tax return pursuant to G. L. c. 63, § 32B.

In determining its corporate excise tax for the 1987 tax year, NYNEX calculated the net income of the taxpayer group as a single entity, taking into account deductions for NOLs incurred in 1984 and 1986 by six of the subsidiaries. Those NOLs totaled $187,539,336.[2] (NYNEX by itself was a profitable company during both of those years.) NYNEX applied the deductions for NOLs of these subsidiaries to reduce to zero the corporate excise tax of the taxpayer group in the combined corporate excise tax return.

Beginning in May, 1991, NYNEX entered into consent agreements with the commissioner extending the time within which the commissioner might assess corporate excise tax as due for the 1987 tax year. See G. L. c. 62C, §§ 26, 27. Following an audit, the commissioner disallowed NYNEX's deductions for NOL carryovers incurred by the six subsidiaries, concluding that such carryovers were not allowed to any corporation (here, the six subsidiaries) where fifty per cent or more of that

---

[1]In 1983, the so-called "Baby Bell" operating companies owned by American Telephone and Telegraph Company (AT&T) were divested from AT&T and placed under the umbrella of one of seven regional holding companies. NYNEX was the regional holding company for the former New England Telephone and Telegraph Company and the former New York Telephone Company.

[2]The NOLs carried forward from 1984 totaled $121,814,625, and those from 1986 totaled $65,724,711.

corporation's voting stock was owned by another corporation (here, NYNEX).

On November 8, 1994, the commissioner issued NYNEX a notice of intention to assess corporate excise tax for the 1987 tax year. Following a preassessment conference, the commissioner upheld his decision and, by notice dated August 1, 1995, he assessed NYNEX corporate excise tax in the amount of $2,888,587, plus interest. NYNEX paid the assessment, together with all accrued interest.

On December 13, 1995, NYNEX filed an application for abatement of the entire assessment and interest, which the commissioner denied. On May 1, 1996, NYNEX filed its petition for review with the board, which affirmed the commissioner's denial of the abatement, resulting in the present appeal.

*Discussion.* Our review of a determination by the board is limited to questions of law. *Towle* v. *Commissioner of Rev.,* 397 Mass. 599, 601 (1986). A taxpayer bears the burden of proving as a matter of law the right to an abatement of a tax. See *Schlaiker* v. *Assessors of Great Barrington,* 365 Mass. 243, 245 (1974). The determination of the board, a State agency charged with the administration of the tax abatement process, is entitled to some deference. See *French* v. *Assessors of Boston,* 383 Mass. 481, 482 (1981); *McCarthy* v. *Commissioner of Rev.,* 391 Mass. 630, 632 (1984).

NYNEX contends that, having elected to file a combined Massachusetts corporate excise tax return pursuant to G. L. c. 63, § 32B, the taxpayer group should have been treated as a single entity that was entitled to carry forward and use NOLs incurred by the six subsidiaries in 1984 and 1986 to reduce the amount of corporate excise tax due for the 1987 tax year. NYNEX argues that the commissioner's denial of its abatement request rests on an erroneous interpretation of § 32B that is wholly inconsistent with treating the taxpayer group as a single entity. We disagree.

Domestic and foreign corporations that conduct business in this Commonwealth are required to pay a corporate excise tax based in part on their net income derived from business activities carried on in Massachusetts. See G. L. c. 63, §§ 32, 38, 39. General Laws c. 63, § 38(*a*), provides that "[n]et income as

defined in section thirty of [chapter 63] adjusted [in accordance with section 38] shall constitute taxable net income." Pursuant to the version of G. L. c. 63, § 30(5)(*b*), that was in effect during the 1987 tax year, "net income" for Massachusetts corporate excise tax purposes was defined as "gross income less the deductions, but not credits, allowable under the provisions of the Federal Internal Revenue Code, as amended and in effect for the taxable year." However, § 30(5)(*b*) restricted or denied certain deductions for purposes of calculating net income. One such deduction that was restricted for the 1987 tax year was the carryover of NOLs sustained in prior taxable years. Such carryovers were only allowed:

> "for the first five consecutive taxable years of a corporation, measured from the date of its organization whether or not organized under the laws of the commonwealth, so much of the loss as determined under section one hundred and seventy-two of the Federal Internal Revenue Code, as amended and in effect for the taxable year, as is represented by net operating loss carryovers for taxable years ending December thirty-first, nineteen hundred and seventy-three and thereafter shall be deducted; provided, however, that *such carryover losses shall not be allowed to any corporation fifty per cent or more of whose voting stock is owned by another corporation* whether or not such owning corporation is taxable in this commonwealth . . ." (emphasis supplied).

G. L. c. 63, § 30(5)(*b*)(ii), as amended through St. 1973, c. 752, § 1. While the NOLs at issue here satisfied the first requirement for deductibility, having been incurred within the first five years of corporate existence, they failed to satisfy the fifty per cent ownership limitation on deductibility. The six subsidiaries that generated the NOLs were wholly owned by NYNEX. In consequence, the plain language of G. L. c. 63, § 30(5)(*b*)(ii), precluded such wholly owned subsidiaries from deducting in the 1987 tax year the NOLs that had been incurred during the 1984 and 1986 tax years. Where these NOLs were not allowed to be used by the six subsidiaries, they could not be used to offset the corporate excise tax owed by NYNEX.

NYNEX contends that it was entitled to carry over and deduct

the NOLs incurred by the six subsidiaries because, as permitted by G. L. c. 63, § 32B, the taxpayer group filed a combined Massachusetts corporate excise tax return for the 1987 tax year. Two or more corporations filing a consolidated Federal income tax return may, at their option, file a Massachusetts combined corporate excise tax return and "be assessed upon their combined net income." G. L. c. 63, § 32B.[3] This statutory provision, NYNEX argues, conferred upon the taxpayer group the right to be treated as a "single entity." As such, NOLs incurred by the six subsidiaries would be treated as NOLs of NYNEX and, therefore, would be deductible in the 1987 tax year because NYNEX was not barred by the fifty per cent ownership restriction set forth in G. L. c. 63, § 30(5)(b)(ii).

We conclude that the board properly declined to read into the definition of "net income" for purposes of G. L. c. 63, §§ 30(5)(b) and 38(a), a procedure for calculating the assessment of corporate excise tax that the Legislature did not choose to include in the statutory provisions.[4] Statutes are to be interpreted so as to render a "consistent and harmonious"

---

[3]In 1988, G. L. c. 63, § 32B, was amended by St. 1988, c. 202, § 15, to set forth the manner in which net income is to be calculated by corporations that elect to file a combined Massachusetts corporate excise tax return. It provides, in pertinent part, as follows:

"Where such election is made, each and every member of the consolidated group subject to taxation under section thirty-two or thirty-nine shall be included in such return of combined net income. The combined net income shall be determined as follows: (a) the taxable net income of each such corporation apportioned to this commonwealth pursuant to the provisions of section thirty-eight shall first be separately determined; and (b) the taxable net income of each such corporation, as so determined, shall then be added together and shall constitute their combined net income taxable under this chapter."

This amendment was made applicable to taxable years ending on or after December 31, 1988, and, therefore, was not in effect for the 1987 tax year at issue here. See St. 1988, c. 202, § 32. This amendment was interpreted in *Farrell Enterprises, Inc.* v. *Commissioner of Rev.*, 46 Mass. App. Ct. 564 (1999), and such interpretation is not inconsistent with our analysis here, pertaining to the pre-1988 version of G. L. c. 63, § 32B. See *FMR Corp.* v. *Commissioner of Rev.*, 441 Mass. 810, 814-815 (2004). Compare *Macy's East, Inc.* v. *Commissioner of Rev.*, 441 Mass. 797, 803 (2004).

[4]We agree with the board that one purpose of G. L. c. 63, § 30(5)(b)(ii), was to give favorable tax treatment to entirely new businesses by allowing

whole, "capable of effectuating the presumed intention of the Legislature." *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375 (2000), quoting from *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 352 Mass. 617, 618 (1967). See *Commissioner of Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999). The determination of a corporation's taxable net income to be apportioned to Massachusetts involved several distinct steps under G. L. c. 63, §§ 30(5)(*b*) and 38(*a*). First, there was to be a calculation of "net income" under § 30(5)(*b*). Second, there was to be a calculation of "taxable net income" by adjusting the "net income" as specified in § 38(*a*). Then, the corporation was to apportion the proper share of its "taxable net income" to Massachusetts pursuant to G. L. c. 63, § 38(*b*)-(*j*). See *General Elec. Co.* v. *Commissioner of Rev.*, 402 Mass. 523, 524-525 (1988) ("corporations which elect to file a combined Massachusetts return under § 32B should combine each individual corporation's net income, reduce it to taxable net income, and then apportion that combined amount to Massachusetts pursuant to § 38"). The term "combined net income" as used in G. L. c. 63, § 32B, meant that the *net* income (after deductions, such as NOLs, had been taken) of two or more corporations filing a combined Massachusetts corporate excise tax return was added together prior to being reduced to taxable net income and then apportioned. *General Elec. Co.* v. *Commissioner of Rev.*, *supra* at 524-525. Compare *FMR Corp.* v. *Commissioner of Rev.*, 441 Mass. 810, 813, 816, 819-820 (2004). It did not mean combining the *gross* income of a parent corporation and its subsidiaries (the taxpayer group here) as if they were a single organization, then calculating the net income of that single entity, applying the carryover NOLs as deductions available to the single entity. The treatment of a corporation and its subsidiaries as a "single entity" only occurred *after* the calculation of each individual corporation's *net* income. Thus, while G. L. c. 63, § 32B, pertained to the assessment of corporate excise tax on the

---

them to deduct their NOLs during the first five years of their existence. However, to the extent that a "new" business is at least fifty per cent owned by another corporation, a tax cushion is less imperative because the "new" business can presumably rely on the financial resources of that other corporation to offset losses.

"combined net income" of several corporations, deductions such as NOLs only related to gross income and, in particular, to reducing gross income to arrive at "net income." Compare *FMR Corp.* v. *Commissioner of Rev., supra*; *Farrell Enterprises, Inc.* v. *Commissioner of Rev.*, 46 Mass. App. Ct. 564, 569-571 (1999) (principles of combined accounting in post-1988 version of G. L. c. 63, § 32B, dictate that NOLs be carried forward separately by each member of combined group, thus retaining individual tax attributes of each member).

In conformity with this statutory scheme, it was the six subsidiaries at issue that each had to claim the NOL carryovers in determining their respective individual net income. However, because each of the six subsidiaries was wholly owned by NYNEX, § 30(5)(*b*)(ii) denied the subsidiaries the right to use the NOL carryovers to reduce their gross income, and NYNEX was not entitled to an abatement of its corporate excise tax for the 1987 tax year.

NYNEX's reliance on *Walter Kidde & Co.* v. *Commissioner of Rev.*, 389 Mass. 577 (1983), is unavailing. In that case, corporations electing to file a combined return under G. L. c. 63, § 32B, were treated as a single entity and an investment tax credit claimed by one of the corporations was allowed to offset the total corporate excise tax due. *Id.* at 580. The investment *credit* applied to the ultimate calculation of the excise tax applicable to the combined corporate entity, see G. L. c. 63, § 31A(*a*), not to the initial calculation of each individual corporation's net income, where tax *deductions* come into play.

Similarly, NYNEX's reliance on *State Tax Commn.* v. *La Touraine Coffee Co.*, 361 Mass. 773 (1972), is unpersuasive. There, the court concluded that an "intercompany dividend" could be excluded from the calculation of net income on a combined corporate excise tax return. *Id.* at 779. However, the exclusion of a particular item from the calculation of "net income" under G. L. c. 63, § 30(5)(*b*), is not determinative of whether several corporate entities can aggregate individual income and deductions before arriving at the calculation of "net income."

> *Decision of the Appellate Tax Board affirmed.*