# Macy's East, Inc. *vs.* Commissioner of Revenue.

Suffolk. April 6, 2004. - May 27, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Taxation,* Corporate excise, Deduction from income. *Corporation,* Merger, Reorganization. *Constitutional Law,* Taxation, Supremacy of Federal law, Commerce clause. *Words,* "Gross income," "Net income."

Brief overview of the State corporate excise tax scheme. [800-803]

This court concluded that the corporate taxpayer failed to meet its burden of proving that it was entitled, under the net operating loss (NOL) provision of the State corporate excise scheme, G. L. c. 63, § 30, to carry forward and deduct the premerger NOLs of corporations it had absorbed, given the silence of the statute concerning the deduction and the inconclusiveness of the legislative history. [803-804]

In an appeal from a decision of the Appellate Tax Board, this court concluded that 830 Code Mass. Regs. § 63.30.2(11) (1993), prohibiting the carrying forward and deduction of net operating losses such as those incurred by four corporations prior to their merger and absorption by the taxpayer corporation, did not impose a limitation not authorized by statute; further, this court concluded that the defendant had not interpreted the regulation in an arbitrary or nonuniform manner. [804-808]

This court concluded that the Appellate Tax Board correctly rejected claims that 830 Code Mass. Regs. § 63.30.2(11) (1993), prohibiting, for State corporate excise tax purposes, corporations from carrying forward certain losses from corporations they had absorbed, violated the supremacy clause, due process clause, commerce clause, or equal protection principles of the United States Constitution. [808-809]

Appeal from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul H. Frankel,* of New York (*Maxwell D. Solet* with him) for the taxpayer.

*Thomas K. Condon* (*Christopher M. Glionna* with him) for Commissioner of Revenue.

Greaney, J. We transferred this case to this court on our own motion to decide whether, under Massachusetts law, the tax-

payer, Macy's East, Inc. (Macy's East), may carry forward and deduct, for State corporate excise tax purposes, premerger net operating losses (NOLs), generated by four entities it absorbed in various mergers. The Appellate Tax Board (board) concluded that Macy's East may not carry forward and deduct these NOLs, and affirmed the Commissioner of Revenue's (commissioner's) denial of Macy's East's applications for abatement and amended corporate excise tax returns for the taxable period that ended February 1, 1997 (taxable period). We affirm the decision of the board.

The board found the following facts.[1] See G. L. c. 58A, § 13 ("The decision of the board shall be final as to findings of fact"). During the taxable period, Macy's East was a corporation organized under Ohio law, and had its headquarters in New York. Macy's East is engaged in the business of operating retail department stores. During the taxable period, Macy's East operated eleven retail stores in Massachusetts, which previously had been operated as Jordan Marsh Stores Corporation (Jordan Marsh) retail stores.

Macy's East was the surviving corporation after a series of corporate reorganizations occurring between 1986 and 1994. One party to this series of reorganizations, Federated Department Stores, Inc. (Federated), was formed as a holding company by several department stores, including Abraham & Straus (A&S). On May 3, 1988, Campeau Corporation, which owned Jordan Marsh, acquired Federated. On January 15, 1990, Federated and some of its subsidiaries, including Jordan Marsh, filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of Ohio.

On February 4, 1992, Federated emerged from bankruptcy pursuant to a plan of reorganization. Federated continued to conduct its retail business through the operation of its subsidiaries Jordan Marsh and A&S. Jordan Marsh operated retail department stores in Massachusetts, and A&S operated retail department stores primarily in New York.

On July 15, 1986, R.H. Macy & Company, Inc. (Macy's),

---

[1] In some instances, the findings have been supplemented with additional undisputed facts from the record.

then known as Macy Acquiring Corporation, acquired the former R.H. Macy & Company, Inc. (former Macy's), a retail department corporation, in a leveraged buyout. On January 27, 1992, Macy's, and some of its subsidiaries, filed petitions in bankruptcy for reorganization under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York. Macy's continued to conduct its retail business through the operation of several subsidiaries, the principal subsidiaries being Macy's Northeast, Inc. (Macy's Northeast), and Macy's South, Inc. (Macy's South). Both Macy's Northeast and Macy's South were corporations organized under Delaware law.

On September 8, 1994, a Bankruptcy Court judge of the United States Bankruptcy Court for the Southern District of New York approved an agreement of merger between Federated and Macy's, pursuant to which Macy's would emerge as the surviving corporation of the combined company and would change its name to Federated. As part of the reorganization plan, Macy's East was created on December 13, 1994. Macy's East was organized for the purpose of operating the businesses of Macy's Northeast and Macy's South, which merged into Macy's East on their emergence from bankruptcy on December 14, 1994. Macy's East operated under the tax identification number previously used by Macy's Northeast. Unlike Macy's Northeast and Macy's South, the new Macy's East emerged as a corporation organized under Ohio law. Macy's East operated its business in both the northeastern and the southeastern regions of the country, districts which previously had been operated separately by Macy's Northeast and Macy's South, respectively. Prior to this merger, Macy's Northeast and Macy's South had accumulated NOLs during their 1991 through 1995 fiscal years.

On August 26, 1995, Jordan Marsh and A&S were absorbed into Macy's East. The directors and officers of Macy's East became the directors and officers of the merged corporation, and each previously issued and outstanding share of A&S and Jordan Marsh common stock were canceled and retired. After the merger, Macy's East operated the retail stores previously owned by Jordan Marsh and A&S. A&S had not conducted business in Massachusetts. Before the merger, Jordan Marsh

and A&S had accumulated NOLs during their 1991 through 1995 fiscal years.

On May 8, 1998, Macy's East filed with the commissioner an application for abatement and an amended combined corporate excise tax return for the taxable period showing an overpayment of tax and requesting a refund of the income portion of the corporate excise equal to $1,349,808. Macy's East attributed the requested refund amount to the use of NOL carryforwards previously incurred by Jordan Marsh during its 1991 through 1995 fiscal years. The commissioner denied the application for abatement on October 27, 1998, on the ground that a regulation, promulgated in 1993, 830 Code Mass. Regs. § 63.30.2(11) (1993) (quoted in its entirety, *infra*), prohibits a surviving corporation of a merger to deduct or carry forward the NOLs of a corporation it absorbs. Macy's East then filed various amended returns for the taxable period seeking to deduct premerger NOLs attributable to A&S, Macy's Northeast, and Macy's South.

After further proceedings that need not be detailed, an evidentiary hearing was held before the board. The board rendered a decision in favor of the commissioner and, subsequent to that decision, issued its written findings and conclusions. The board noted that the Massachusetts corporate excise tax statutory scheme, contrary to the Federal scheme, retains the individual tax attributes of each entity subject to the tax, and concluded that Macy's East failed to meet its burden of proving that it qualified for the statutory deduction for using the premerger NOLs incurred by other corporations. The board further concluded that its interpretation was supported by the commissioner's reasonable regulation interpreting the statute, and rejected several constitutional challenges to the regulation. This appeal followed.

1. "We will not reverse a decision of the board 'if it is based on substantial evidence and on a correct application of the law.' " *Bill DeLuca Enters., Inc.* v. *Commissioner of Revenue*, 431 Mass. 314, 315 (2000), quoting *Koch* v. *Commissioner of Revenue*, 416 Mass. 540, 555 (1993). Macy's East argues that the board incorrectly determined that the Massachusetts corporate excise tax provisions do not allow it to deduct the premerger NOLs of Jordan Marsh, A&S, Macy's Northeast, and Macy's

South. The statutory provision at the heart of this dispute is G. L. c. 63, § 30 (5) (*a*), as appearing in St. 1992, c. 133, § 403, and is called, for our purposes, the Massachusetts net operating loss provision or Massachusetts NOL provision. Before defining that provision, a brief overview of the State corporate excise tax scheme is in order.

General Laws c. 63, § 32, as amended through St. 1988, c. 202, § 14; § 38; and § 39, as amended through St. 1990, c. 150, § 349, impose an excise tax on domestic and foreign corporations. A portion of that tax is based on a corporation's net income derived from business activities carried on in Massachusetts. § 38. The starting point for calculating a corporation's net income involves first calculating a corporation's "gross income." See § 30 (4), as amended through St. 1992, c. 133, §§ 401, 402.[2] General Laws c. 63, § 30 (3), defines "[g]ross income" as that term is "defined under the provisions of the Federal Internal Revenue Code [I.R.C.] as amended and in effect for the taxable year" with some exceptions not relevant here. Following the determination of a corporation's gross income, its "net income" must be calculated. "Net income" is defined in G. L. c. 63 as "gross income less the deductions, but not credits, allowable under the provisions of the [I.R.C.] as amended and in effect for the taxable year." G. L. c. 63, § 30 (4). The definition of "[n]et income" also provides:

> "Deductions with respect to the following items, however, shall not be allowed:—
>
> (i) dividends received[;]
>
> (ii) *[l]osses sustained in other taxable years, except for the net operating losses as provided in paragraph five of this section*[;]

---

[2]Former paragraph 5 was "hereby further amended by striking out . . . the designation '(*b*)' and inserting in place thereof the designation: 4 [and] striking out the subparagraph (ii) and inserting in place thereof the following subparagraph: — 'Losses sustained in other taxable years, except for the net operating losses as provided in paragraph five of this section.' " St. 1992, c. 133, §§ 401, 402.

(iii) taxes on or measured by income, franchise taxes measured by net income, franchise taxes for the privilege of doing business and capital stock taxes imposed by any state" (emphasis added).

*Id.* See note 2, *supra.*

The relevant portion of the 1992 version of G. L. c. 63, § 30 (5), provides:

> "For purposes of this chapter, the Massachusetts net operating loss incurred in a taxable year shall mean the amount by which the deductions allowed under paragraph four, including the dividends-received deduction allowed in section thirty-eight (*a*) (1) and not including the deductions for net operating losses under this paragraph, exceed gross income for the taxable year as defined in paragraph three of this section."

There is no dispute that, for Federal tax purposes, the relevant, and then applicable, provisions of the I.R.C. allowed Macy's East to carry forward and deduct the NOLs at issue. Under the Federal scheme, I.R.C. § 172 is the basic NOL provision and identifies and allows NOL carryovers and carrybacks. See 26 U.S.C. § 172(a) (2000) ("There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of [1] the net operating loss carryovers to such year, plus [2] the net operating loss carrybacks to such year").[3] Internal Revenue Code § 381(a) provides for, subject to certain limitations, the carryover of NOLs (under I.R.C. § 172) in I.R.C. § 332 liquidations of subsidiaries (I.R.C. § 381[a][1]) and in certain tax-free organizations under I.R.C. § 368(a)(1), specifically, those "reorganization[s]" defined in subparagraphs (A), (C), (D), (F), and (G) (I.R.C. § 381[a][2]). 26 U.S.C. § 381. Of the qualifying reorganizations for NOL carryforwards under I.R.C. § 381(a)(2) is a "statutory merger or consolidation," or Type A reorganization, see I.R.C. § 368(*a*)(1)(A), which Macy's East states (and no one disputes) is the type of merger that took place with respect to each of the absorbed entities in this

---

[3] The Federal net operating loss (NOL) is defined as "the excess of the deductions allowed . . . over the gross income. Such excess shall be computed with the modifications specified in subsection (d)." 26 U.S.C. § 172(c).

case (Macy's Northeast, Macy's South, Jordan Marsh, and A&S).

The issue presented in this case is whether, under the Massachusetts NOL provision, Macy's East may similarly use (carry forward and deduct) the premerger NOLs of corporations it absorbed. Macy's East does not argue that the State NOL provision expressly allows a surviving corporation to deduct the premerger NOLs of an absorbed corporation in a statutory merger. (Macy's East cannot advance such an argument because the Massachusetts NOL provision is silent on the matter.) Rather, Macy's East argues that there is no language in the Massachusetts NOL provision, or in its legislative history, that supports departure from the Federal NOL tax provisions.

While the "Massachusetts tax statutes and the [I.R.C.] are inextricably interwoven," *Commissioner of Revenue* v. *Franchi*, 423 Mass. 817, 819 (1996), Massachusetts tax law can and does depart from Federal tax law, particularly in matters authorizing deductions for prior year's losses, see *Bill DeLuca Enters., Inc.* v. *Commissioner of Revenue, supra* at 325 (noting that "[t]he Massachusetts Legislature has consistently chosen to treat excess deductions from a previous tax year in a different manner from the I.R.C. . . . These statutes evince a persistent and conscious legislative decision to take a different path from that of the Federal government in ameliorating the transactional inequities that arise from annual taxation"). See also *Farrell Enters., Inc.* v. *Commissioner of Revenue*, 46 Mass. App. Ct. 564, 572 (1999) (noting that "the Massachusetts statute and regulations regarding combined returns do not follow the Federal regulations regarding the filing of consolidated income tax returns which explicitly permit the NOL carry forwards of all of the members to be aggregated and made available in the calculation of a group's consolidated income").[4] Also, in this case, the legislative history is inconclusive. Although, as Macy's East correctly points out, a direct reference to I.R.C. § 172 in

[4]We reject Macy's East's attempt to distinguish *Farrell Enters., Inc.* v. *Commissioner of Revenue*, 46 Mass. App. Ct. 564, 572 (1999), on the ground that Macy's East "is a continuation of the entities that generated the NOLs." The board's findings indicate that it rejected any such implicit claim, and Macy's East does not identify sufficient evidence to demonstrate that the board's findings on the issue are unsupported by substantial evidence.

G. L. c. 63, § 30 (4) (ii), was deleted in 1992, compare St. 1988, c. 202, § 10 (disallowing deductions for "losses sustained in other taxable years; provided, however, that net operating losses as defined in [I.R.C. § 172] as amended and in effect for the taxable year of the losses which are sustained in taxable years ending on or after December [31, 1989], shall be allowed"), with St. 1992, c. 133, §§ 402, 403 (deleting above language quoted above in St. 1988, c. 202, § 10, and inserting the language in G. L. c. 63, § 30 [5], that is at issue in this case), the Massachusetts NOL definition that was adopted by the 1992 legislation, unlike I.R.C. § 381(a)(2), does not plainly authorize a surviving corporation in a merger to use NOLs generated by the entities it absorbed.

As correctly recognized by the board, Macy's East overlooks the significance of what it is seeking, namely, a deduction. "We have frequently recognized that an exemption from taxation 'is a matter of special favor or grace,' and that statutes granting exemptions from taxation are therefore to be strictly construed." *South Boston Sav. Bank* v. *Commissioner of Revenue*, 418 Mass. 695, 698 (1994), citing *State Tax Comm'n* v. *Blinder*, 336 Mass. 698, 703 (1958) ("an exemption [is] . . . to be recognized only where the property falls clearly and unmistakably within the express words of a legislative command"). "The burden is on the taxpayer to demonstrate entitlement to an exemption claimed." *South Boston Sav. Bank* v. *Commissioner of Revenue*, *supra*. Where the statute is silent concerning the deduction Macy's East is attempting to claim, and the legislative history inconclusive, we agree with the board's conclusion that Macy's East "failed to meet its burden of proving that it qualified [for the deduction] under the terms of the statute."

2. Macy's East correctly construes the Massachusetts NOL provision as creating an exception to the State disallowance of the Federal NOL deduction. Macy's East also correctly notes that "[n]owhere in [the Massachusetts NOL provision] does it say that a deduction should or should not be allowed." However, despite the fact that the commissioner is authorized to promulgate regulations "necessary to interpret and enforce any statute imposing any tax, excise or fee," G. L. c. 14, § 6, Macy's East contends that the commissioner's regulation, which unambigu-

ously prohibits the carryforward of the type attempted here, is invalid because it "imposes a limitation not authorized by the statute" and because the department has interpreted the regulation in an arbitrary and nonuniform manner. We reject these contentions.

The commissioner's regulation reads as follows:

> "(a) *Mergers.* In the event of a merger of two or more corporations, the surviving corporation retains any net operating loss that it separately incurred before the merger, subject to the limitations of 830 [Code Mass. Regs. §] 63.30.2 (11) (b). All of the net operating loss of a corporation absorbed in the merger is lost. The surviving corporation may not deduct or carry over the net operating loss of a corporation it absorbs. In the event of a consolidation of two or more previously existing corporations into a new corporation, the new corporation starts with no net operating loss. All of the net operating loss of the previously existing corporations is lost. The new corporation may not deduct or carry over any net operating loss incurred by any of the previously existing corporations before the consolidation.

> "(b) *Changes in Ownership.* Where a corporation undergoes an ownership change, as defined in [I.R.C.] § 382 (g), the amount of the corporation's net income that may be offset by pre-change net operating loss in any taxable year shall not exceed the limitation imposed by [I.R.C.] § 382, provided that the limitation shall be adjusted for differences between Massachusetts taxable net income and federal taxable income determined without regard to the federal net operating loss deduction. The adjustment shall be made for each taxable year by multiplying the [I.R.C.] § 382 limitation by Massachusetts taxable net income, determined without regard to the net operating loss deduction, and dividing the resulting amount by federal taxable income, determined without regard to the federal net operating loss deduction. Any amount of net operating loss that cannot be deducted because of the limitation may be carried over as provided in 830 [Code Mass. Regs. §] 63.30.2 (7)."

830 Code Mass. Regs. § 63.30.2(11) (1993) (regulation). The

regulation was adopted contemporaneously (specifically, on January 1, 1993) with the enactment of the amendment to the Massachusetts NOL provision that rewrote paragraph 5, see St. 1992, c. 133, §§ 402, 403, and deleted reference to I.R.C. § 172. So long as consistently interpreted thereafter, the commissioner's position is entitled to some deference because the Legislature has delegated to the commissioner the responsibility of administering, interpreting, and enforcing the State tax laws, and resolving statutory ambiguity, or silence as in this case. See G. L. c. 14, § 6; *First Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n*, 372 Mass. 478, 485 (1977).

Macy's East does not argue that the board erred in determining that, under paragraph (a) of the regulation, the creation of Macy's East by the merger of Macy's Northeast and Macy's South constituted "a consolidation of two or more previously existing corporations into a new corporation," and that the subsequent merger of Jordan Marsh and A&P into Macy's East constituted "a merger of two or more corporations." The board correctly concluded that the commissioner's regulation was a reasonable interpretation of the corresponding statutory provisions, G. L. c. 63, § 30 (4) and § 30 (5), and that the regulation's "denial of the deductions at issue is consistent with the complete body of Massachusetts tax law, namely the statutes and cases interpreting those statutes, which establishes the Commonwealth's corporate tax structure as adopting an individual-entity approach." See *Farrell Enters., Inc.* v. *Commissioner of Revenue*, 46 Mass. App. Ct. 564, 572 (1999). Further, due to the differences between "A" and "F" reorganizations as defined in I.R.C. § 368(a)(1)(A) (reorganizations involving "a statutory merger or consolidation") and I.R.C. § 368(a)(1)(F) (reorganizations involving "a mere change in identity, form, or place of organization of one corporation, however effected"), and the specifics surrounding the mergers in this case, the commissioner could reasonably treat, in one of its letter rulings, NOLs from that transaction (an F reorganization) differently. Thus, the commissioner's different treatment of the NOLs of a particular F reorganization in one set of limited and distinguishable factual circumstances does not render the commissioner's tax treatment "arbitrary" or "non-uniform" as Macy's East contends. Macy's East's various arguments concerning the incorporation, in

paragraph (b) of the commissioner's regulation, of I.R.C. § 382 limitations, overlook the complexity of the Federal NOL scheme and the considerable discretion afforded to the commissioner to enact regulations interpreting or enforcing the statutes imposing the State corporate excise tax.[5] Surely, where Congress has distinguished various forms of reorganizations, permitting NOL carryovers only with respect to certain types of reorganizations, see I.R.C. § 381(a)(2), and applying the limitations in I.R.C. § 382,[6] in the case of ownership changes occasioned by an "equity structure shift," to only some of the types of reorganizations defined in I.R.C. § 381, see I.R.C. § 382(g)(3)(A), the commissioner may also rationally treat various types of reorganizations differently. As correctly noted by the board, "the [r]egulation's reference to [I.R.C.] § 382 does not speak to the deduction of losses sustained in prior years by a *different* taxpayer" (emphasis added).

A few remaining points should be stated. Macy's East cites to law in other jurisdictions as support for its position. E.g., *Chilivis v. Studebaker Worthington, Inc.*, 137 Ga. App. 337 (1976). Cf. *Richard's Auto City, Inc. v. Director, Div. of Taxation*, 140 N.J. 523 (1995). The law in other jurisdictions, however, cannot serve as a source for interpreting the Massachusetts NOL provision and corresponding regulation. As one commentator explained, "The [S]tate NOL rules vary quite markedly. While some [S]tates follow the [F]ederal provisions regarding the carryback and carryforward of NOLs, other [S]tates do not . . . . The [S]tate rules regarding utilization of NOLs after a merger or acquisition also vary significantly and can be quite complex." Lippman, 1200 Tax Management Multistate Tax Portfolios, Income Taxes: State Treatment of Net Operating Losses, at 1200.03.B1 (1999). Along those lines, while we are aware, as noted by Macy's East's expert on tax policy matters at the hearing, that the commissioner's treatment of premerger NOLs in this case "embodies a philosophy

---

[5]The same can be said of Macy's East's argument concerning the commissioner's treatment of NOLs in reorganizations defined under I.R.C. § 368(a)(1)(F) (reorganizations involving "a mere change in identity, form, or place of organization of one corporation, however effected").

[6]In general terms, I.R.C. § 382 imposes limitations on a corporation's use of its NOLs following certain corporate ownership changes. See 26 U.S.C. § 382.

that has long been rejected at the [F]ederal level" and has been the subject of much criticism, see Joyner, Some State Corporate NOL Carryovers Are Still Governed by Outdated Federal Doctrine, 4 J. Multistate Tax'n 260 (1995), such policy matters are appropriately left for consideration by the Legislature, see *Bill DeLuca Enters., Inc.* v. *Commissioner of Revenue*, 431 Mass. 314, 325 & n.16 (2000). We find significance in the fact that, since the regulation went into effect in 1993, the Legislature, which is assumed to know of the regulation, see *Gillette Co.* v. *Commissioner of Revenue*, 425 Mass. 670, 680-681 (1997), has not amended the statute to trump the regulation by expressly permitting a surviving corporation's use of carryforwards and deductions of premerger NOLs of the corporations it absorbed.

3. The board correctly rejected Macy's East's constitutional challenges to the regulation. Macy's East's claims (that, because the NOLs were an "asset" of the bankruptcy estates of each of the debtor corporations, the regulation violates the supremacy clause of the United States Constitution because it "divests Macy's East of one of its most significant assets — the NOLs of the [absorbed] [c]orporations") ignores that "[t]he nature and extent of the debtor's interest in property is determined by applicable non-bankruptcy law," *In re Prudential Lines Inc.*, 928 F.2d 565, 569 (2d Cir.), cert. denied, 502 U.S. 821 (1991), or State law, see *Butner* v. *United States*, 440 U.S. 48, 54 (1979). Because Macy's East may not, under State law, carry forward and deduct the NOLs of Macy's Northeast, Macy's South, Jordan Marsh, and A&S, those NOLs are not property subject to be included in Macy's East's bankruptcy estate. Thus, there is no deprivation of any property interest.

In rejecting Macy's East's claims of due process and commerce clause violations under the United States Constitution, the board correctly concluded that Macy's East failed to produce "clear and cogent evidence" of extraterritorial taxation when its income was subject to apportionment according to the Legislature's approved, three-factor statutory formula. See *Gillette Co.* v. *Commissioner of Revenue, supra* at 680-681. Macy's East overlooks that the evidence it offered in support of its claims constituted calculations based on a separate accounting analysis,

an accounting method that the commissioner was free to reject. See *Becton, Dickinson & Co.* v. *Department of Revenue*, 383 Mass. 786, 787 (1981).

Finally, the board correctly concluded that Macy's East did not satisfy its formidable burden of demonstrating that the commissioner's distinction between "A" and "F" reorganizations defined under I.R.C. § 368(a)(1), and as applied to the facts of this case, violated equal protection principles. See *Nashoba Communications Ltd. Partnership* v. *Assessors of Danvers*, 429 Mass. 126, 128 (1999). As explained by the board, "F" reorganizations typically involve only one business enterprise that emerges essentially unchanged from the reorganization, as opposed to "A" reorganizations, which typically involve multiple corporations with only one surviving corporation and the others no longer existing. That an F reorganization may sometimes "overlap" with other types of reorganizations under I.R.C. § 368(a)(1) has no bearing on the particular facts of this case. We are satisfied that, in the context of this case, there are meaningful distinctions between the two types of reorganizations.

4. We affirm the decision of the board.

*So ordered.*