DAVID A. FINK & another[1] vs. COMMISSIONER OF REVENUE.

No. 06-P-1751.

Suffolk. September 18, 2007. - May 8, 2008.

Present: BERRY, GREEN, & VUONO, JJ.

Railroad. Taxation, Income tax, Nonresident, Exemption.

The Appellate Tax Board erred in concluding that 49 U.S.C. § 11502(a), which furnishes a nonresident income tax exemption for an employee who performs "regularly assigned duties . . . on a railroad," was limited in its application to those employees who performed physical labor on physical facilities and equipment used in railroad transportation operations, where such an interpretation was overly restrictive and contrary to congressional intent and the purposes of the statute, which was enacted to avoid duplicative or multiple taxation on wages paid to all railroad employees working in several States who had regularly assigned duties on the railroad. [679-686]

APPEAL from a decision of the Appellate Tax Board.

Eric L. Hirschhorn (Michael Q. Geary with him) for the taxpayers.

Kenneth W. Salinger, Assistant Attorney General, for Commissioner of Revenue.

BERRY, J. The taxpayers, Linda L. Fink and David A. Fink (David), appeal from a decision of the Appellate Tax Board (board) affirming the refusal by the Commissioner of Revenue (commissioner) to abate the taxpayers' nonresident income tax assessments for tax years 2000-2003. The taxpayers are New Hampshire residents. David is employed by the Springfield Terminal Railway Company (Springfield Railway), a Vermont corporation that operates rail lines and related facilities throughout New England, including Massachusetts.

The taxpayers claim that, for the subject tax years, income earned in Massachusetts by David while working for Springfield

_____

[1] Linda L. Fink.

Railway is exempt from Massachusetts nonresident income tax under 49 U.S.C. § 11502(a) (1995), which provides, in pertinent part, as follows:

> "No part of the compensation [a] *paid by a rail carrier . . .* to an employee who performs [b] *regularly assigned duties . . . on a railroad [c] in more than one State* shall be subject to the income tax laws of any State or subdivision of that State, other than the State or subdivision thereof of the employee's residence" (emphasis added).

The sole question at issue in this appeal is whether the particular element for tax exemption under § 11502(a), which requires that David be engaged in "regularly assigned duties . . . on a railroad," was met.[2]

The board found that David did not satisfy this element because the board construed the statutory term "regularly assigned duties . . . on a railroad" to be limited to a railroad employee performing "physical labor" on the "physical facilities and equipment used in [railroad] transportation operations." Thus, under the board's statutory interpretation, in order to qualify for the § 11502(a) tax exemption, a railroad employee would have to work in the manner of a track line fixer, maintenance person, conductor, or engineer, and be engaged in the physical repair and maintenance of the railroad, including the moving stock of trains, tracks, and other transportation equipment necessary to run the railroad. David held the position of executive vice-president. Notwithstanding the fact that in addition to in-house executive duties, David also had outside responsibility for assignments relating to the Springfield Railway trains, tracks, bridges, yards, and general equipment — which assignments placed him out on the railroad — the board determined that, because a collective bargaining agreement prohibited executives from performing physical labor on the rail system, David did not qualify for the § 11502(a) tax exemption.

We conclude that the board's interpretation of what constitutes "regularly assigned duties . . . on a railroad" — with its super-

---

[2]The board does not dispute that elements [a] and [c], under § 11502(a), are met, i.e., that the wages paid by Springfield Railway qualify as wages from a "rail carrier," and that David performed duties for Springfield Railway "in more than one State."

imposed requirement of physical labor on physical things — is overly restrictive and contrary to the purposes of § 11502(a). Section 11502(a) was enacted by Congress to avoid wages paid to a railroad employee working in several States being subject to taxation by duplicative or multiple States. Furthermore, we conclude that the board's restrictive interpretation is directly at odds with congressional intent, as reflected in the legislative history underlying § 11502(a), including a 1990 amendment by which Congress broadened the scope of § 11502(a), and the railroad employees covered by this law. The board's restrictive interpretation is contrary to congressional intent. Accordingly, we reverse.

1. *Procedural and factual history.* We summarize the factual background in the administrative record. G. L. c. 58A, § 13. As previously noted, during the relevant tax years, David was an executive vice-president of Springfield Railway. Parts of his regular assignments involved administrative work, managerial functions, and government relations, which David performed from the Massachusetts office, where he was present three days per week. However, other parts of David's regularly assigned duties were extra-office and involved him being out and about on the railroad, including work relating to direct oversight of the condition of the railroad trains, tracks, and general railroad equipment. Such regular work assignments and duties, which placed David outside on the railroad, included (a) inspection and oversight of the condition of the trains, tracks, and equipment, and the work being done thereon; (b) oversight of, and responsibility for, a project involving rehabilitation of Springfield Railway's main freight tracks from New Hampshire to Maine for use in connection with Amtrak passenger trains; (c) responsibility for coordinating Springfield Railway's efforts to return to normal service in the event of a train derailment, in which circumstance David would be dispatched to the derailment site to provide information directly to Springfield Railway's president; and (d) assignments on the "inspection trains," which ran six times annually to test railroad conditions. Certain of these assignments placed David outside the office and on the railroad "two to three times a week."

2. *The board interpretation.* In its analysis determining that 49 U.S.C. § 11502(a) does not apply to a railroad executive such as David, who is prohibited by collective bargaining from

performing physical labor, the board cites 49 U.S.C. § 10102 (1995), which sets forth separate definitions for "rail carrier"[3] and "railroad."[4] Although the board's analysis is less than clear, the board seems to reason that, because the definition of a railroad includes physical railroad equipment (such as spurs, tracks, terminals, bridges, and other intermodal equipment), the word "railroad" appearing in § 11502(a) must perforce be deemed to encompass only physical railroad equipment. From this, the board reasons that a railroad employee must be engaged in physical labor on such physical railroad equipment, in order to qualify for the § 11502(a) tax exemption. According to the board's reasoning,

> "[David] did not engage in the actual physical work of railroad operations, which occurred on the railroad tracks, trains and transportation facilities themselves. . . . The term 'railroad' embraces the physical facilities and equipment used in transportation operations by a 'rail carrier.' It does not apply broadly to any aspect of a rail carrier's business, as [the taxpayers] suggest."

This is ipse dixit logic, and we reject it. Simply because the term "rail carrier" is defined in reference to the primary operational mode of "providing common carrier railroad transportation for compensation," while the term "railroad" is defined in a manner that makes clear that a rail carrier includes the hard physical equipment and facilities used for transportation "in connection with a railroad," those definitions do not translate into a restriction on the class of railroad employees who fall within the § 11502(a) exemption. Put another way, neither of those definitions — which by the way seem congruent in that one addresses railroad transportation for compensation and the other addresses

---

[3]In 49 U.S.C. § 10102(5), "rail carrier" is defined as an entity "providing common carrier railroad transportation for compensation."

[4]In 49 U.S.C. § 10102(6), "railroad" is defined to include:

> "(A) a bridge, car float, ferry, and intermodal equipment used by or in connection with a railroad;

> "(B) the road used by a rail carrier and owned by it or operated under an agreement; and

> "(C) a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation."

the kind of equipment and facilities necessary for that railroad transportation — in any way speaks to a reduction in the class of State tax protected railroad employees so as to reach only those employees who perform physical work on physical equipment on the railroad. Nor do the definitions provide a basis for divesting a railroad employee, even at the executive level, of the § 11502(a) tax exemption against multiple State taxation, so long as the executive performs regularly assigned duties on the railroad. Accord In re McCann, DTA No. 816567 (N.Y. Div. Tax App. Nov. 12, 1999) ("[T]he intent of the statute is to protect employees of railroads who, in *any* capacity of their employment, could have income taxes imposed by more than one state as a result of the nature of their employment" [emphasis added]); *Butler* v. *Department of Rev.*, 14 Or. Tax 195 (1997).

Indeed, the legislative history, to which we now turn, establishes that § 11502(a) was intended by Congress to protect railroad employees working in multiple States. A 1990 amendment effected a major change, expanding the scope of this tax exemption for railroad employees working across State boundaries. Prior to the 1990 amendment, the predecessor version of the current 49 U.S.C. § 11502(a) (codified earlier as 49 U.S.C. § 11504[a]),[5] granted a multi-State tax exemption only to railroad employees working on rolling stock, and "perform[ing] regularly assigned

---

[5]The prior version of 49 U.S.C. § 11502(a), which previously was codified as 49 U.S.C. § 11504(a), effectuated the multi-State tax exemption through placing limitations on State tax withholdings from the wages of a railroad employee working in multiple States, and provided, in pertinent part, as follows:

"(a)(1) In this subsection, an employee is deemed to have earned more than 50 percent of pay in a State or subdivision of a State if the employee —

"(A) performs regularly assigned duties on a locomotive, car, or other track-borne vehicle in at least 2 States . . . or

"(B) is engaged principally in maintaining roadways, signals, communications, and structures or in operating motortrucks from railroad terminals in at least 2 States and the percent of the time worked by the employee in one State or subdivision of that State is more than 50 percent of the total time worked by the employee while employed during the calendar year.

"(2) A rail, express or sleeping car carrier providing transportation . . . shall withhold from the pay of an employee referred to in paragraph (1)

duties on a locomotive, car, or other track-borne vehicle," or "engaged principally in maintaining roadways, signals, communications, and structures or in operating motortrucks from railroad terminals." This pre-1990 version of the statute echoes the board's restrictive construction of § 11502(a), which imposes as a prerequisite that the tax exemption be tied exclusively to physical labor on railroad equipment. However, in the 1990 amendment, Congress struck this limiting, labor-specific language and substituted the more all-encompassing language now appearing in § 11502(a), and which is applicable in this case. See § 7(a) of the Amtrak Reauthorization and Improvement Act of 1990 (Act), Pub. L. No. 101-322.

Contrary to the board's interpretation, this legislative history evinces no congressional intent to protect only employees who perform physical work. To the contrary, it reflects a purposeful departure by Congress from precisely the narrow scope of the exemption that existed under the prior version of the statute. Entries in the legislative history convey the intent to expand the class of railroad employees protected from multi-State taxation. The Senate Report states that "[t]he Committee [on Commerce, Science and Transportation] believes rail and motor carrier employees who perform duties in more than one State should not be subject to taxation in States or subdivisions in which they do not reside." S. Rep. No. 101-44, at 3 (1989). The Congressional Record is in accord. "Under current law . . . employees in the [railroad and trucking industries] are taxed in States where they work, thus providing for multistate taxation. This is a regressive tax law which simply does not make sense. It is poor public

of this subsection only income tax required to be withheld by the laws of a State

". . .

"(A) in which the employee earns more than 50 percent of the pay received by the employee from the carrier; or

"(B) that is the residence of the employee . . . if the employee did not earn in one State or subdivision more than 50 percent of the pay received by the employee from the carrier during the preceding calendar year."

49 U.S.C. § 11504(a) (1988 & Supp. 1989). In 1995, § 11504(a) was renumbered as 49 U.S.C. § 11502(a), with minor changes not relevant to this case. See Pub. L. No. 104-88, Title I, § 102(a), 109 Stat. 844 (1995).

policy." 136 Cong. Rec. S6098-03 (1990). "The bill prevents double taxation of transportation employees who work in more than one State." 136 Cong. Rec. H4122-02 (1990). The conference report on the 1990 amendment describes the amendment as "[p]rovid[ing] that no rail employee shall be subject to income tax laws of any State . . . other than that of the employee's residence." H.R. Conf. Rep. No. 101-471, at 10 (1990).

We note that after this 1990 Federal amendment broadened the scope of the tax exemption in 49 U.S.C. § 11502(a), the Massachusetts tax commissioner issued Technical Information Release (TIR) 93-6 (April 20, 1992), 2 Official MassTax Guide PWS-96 to -98 (2008), which supports the taxpayers' position in this appeal, and is contrary to the board's interpretation of § 11502(a). The stated purpose of TIR 93-6 "is to explain the Massachusetts income tax and withholding rules for employees of certain interstate motor and rail carriers," in response to Congress's passage of the Act and the amendment of the provision now codified in § 11502(a).

TIR 93-6 states that, in light of this 1990 amendment to the State income tax exemption for railroad employees working in multiple States, "Massachusetts may impose its income tax only on interstate motor and rail carrier employees who are Massachusetts residents or who are Massachusetts nonresidents who perform all of their regularly assigned duties in Massachusetts." The additional requirements read into § 11502(a) by the board in this case, that a railroad employee must engage in physical labor on the railroad equipment, do not appear in TIR 93-6.

From all that appears in the record, TIR 93-6 is still in effect. Indeed, to this day, TIR 93-6 is published as an existing agency issued document setting forth the official position of the Department of Revenue (department). See *infra.* This TIR supports the taxpayers' position and is contrary to the board's interpretation of 49 U.S.C. § 11502(a). Notwithstanding the present effect of TIR 93-6, the commissioner claims that TIR 93-6 should not be considered in deciding this appeal. First, the commissioner argues that a TIR is not binding. But, regardless of whether TIR 93-6 is legally binding on the commissioner, "it nevertheless reflects the weakness of the contrary position asserted by the commissioner in the face of the language of the statute." *Lowney* v. *Commissioner of Rev.*, 67 Mass. App. Ct. 718, 724 (2006).

Second, the commissioner argues that the department "clarif[ied]" TIR 93-6 "in a further guidance that it formally published on its public website." See Department of Revenue, Guide to Personal Income Tax: Special Provisions for Certain Taxpayers: Employees of Interstate Motor and Rail Carriers (Internet posting), found at the Web site set forth in the margin.[6] The Internet posting is apparently only available on the department's Web site, and consists of three short paragraphs (only one of which specifically refers to railroad employees),[7] and instructions on filing tax returns. As a preliminary matter, we do not see how the Internet posting provides "clarification" or "further guidance" regarding the essential substance of TIR 93-6. To the contrary, the Internet posting, rather than revoking or modifying TIR 93-6, instead cites the TIR as a corresponding reference.

Beyond that, even if the Internet posting was supposed to clarify, modify, or revoke TIR 93-6, it legally does not do so because the posting fails to comply with the regulatory requirements for TIR revocation or modification (including modification by clarification). The standards governing a TIR, its legal effect, and any modification or revocation thereof are set forth

---

[6]See http://www.mass.gov/?pageIDdorterminal&L6&L0Home&L1Individuals
+and+Families&L2Personal+Income+Tax&L3Current+Year+Tax+Information
&L4Guide+to+Personal+Income+Tax&L5Special+Provisions+for+Certain+
Taxpayers&sidAdor&bterminalcontent&fdor_help_guides_abate_amend_
personal_issues_amtrak&csidAdor (last visited May 6, 2008).

[7]The relevant paragraph of the Internet posting states as follows.

"Railroad Employees:

"The Commonwealth may *not* tax compensation paid by an interstate rail carrier to a nonresident employee who performs regularly assigned duties in more than one state either on a:

"train;

"bridge, car float, lighter, or ferry used by or in connection with a railroad;

"road used by a rail carrier and owned by it or operated under an agreement; or

"switch, spur, track, terminal, facility, or ground, used or necessary for transportation.

"These duties must be performed on a regularly assigned basis; occasional or minimal assignments do not qualify. Clerical or other administrative duties also do not qualify."

in 830 Code Mass. Regs. § 62C.3.1(7) (1993), and provide as follows: "A T.I.R. states the official position of the Department. The Department will use a T.I.R. as precedent in the disposition of cases unless and until it is revoked or modified under 830 [Code Mass. Regs. §] 62C.3.1.(7)(e)2 or otherwise. A taxpayer may rely upon a T.I.R. unless and until it is revoked or modified." 830 Code Mass. Regs. § 62C.3.1(7)(d). We reject any claim by the board that the Internet posting modified TIR 93-6, given the noncompliance with the procedures for revoking or modifying a TIR set forth in 830 Code Mass. Regs. § 62C.3.1.(7)(e)(2), which provides as follows: "The Commissioner may revoke or modify a T.I.R. by issuing a revocation or modification in the same manner as a T.I.R. is issued.[8] A revocation or modification shall identify the T.I.R. and any other public written statements affected, and the extent of the revocation or modification." The Internet posting meets none of these criteria for revocation or modification of TIR 93-6. Thus, TIR 93-6, which supports the taxpayers' position, and upon which "[a] taxpayer may rely," 830 Code Mass. Regs. § 62C.3.1(7)(d), was of legal force and effect as the "official position" of the department at the time of the proceedings involving the taxpayers in this case.

Given the foregoing, this court cannot, as matter of law, accept the board's interpretation of the tax exemption at issue in this case. There is not present in, nor can there be engrafted upon, 49 U.S.C. § 11502(a), the physical equipment/physical labor requirements that the board imposed. We do not read 49 U.S.C. § 11502(a) to mean that a railroad executive, with regularly assigned duties on the railroad, is excluded from the tax exemption simply because he did not engage in physical labor on physical equipment, such as running the trains or laboring to lay and solder the tracks. Nor does § 11502(a) require that the executive work a specific number of hours on specific days, as long as there are regularly assigned duties that must be performed on the railroad. On this point, in denying the § 11502(a) tax exemption, the board also cited the circumstance that David cannot be deemed to perform "regularly assigned duties" because there was flexibility in the timing of, and discretion in the man-

---

[8]Title 830 Code Mass. Regs. § 62C.3.1.(7)(e)(1) provides that a TIR may be issued by the commissioner "without notice or public hearing."

ner in which David performed, his regularly assigned duties, including regularly assigned duties delegated to him by Springfield Railway's president. We reject the board's position that § 11502(a) requires that regularly assigned duties be performed in a regimented time frame, as if a time card must be punched in accord with specific hours of work on the railroad on specific days. Rather, the controlling inquiry is whether the employee has regularly assigned duties that must be performed to accomplish the assigned duties and resultant responsibilities for work on the railroad. That an employee may have some discretion with regard to his schedule in performing his work on the railroad does not per se exclude him from the ambit of § 11502(a), as long as he had regularly assigned duties on the railroad, which the record reflects David had.

3. *Conclusion.* While a court will generally tend to give deference to an administrative agency in the realm of its expertise and experience, see *Moot* v. *Department of Envtl. Protection,* 448 Mass. 340, 346 (2007), "[a]n incorrect interpretation of a statute by an administrative agency is not entitled to deference." *Kszepka's Case,* 408 Mass. 843, 847 (1990). Because there was error of law in the denial of the tax exemption under 49 U.S.C. § 11502(a), we reverse the board's decision.

*Decision of Appellate Tax Board*
*reversed.*