Curran, Dennis J., J.
INTRODUCTION
Northeastern University, the Trustees of Boston University, Wellesley College, and 131 Willow Avenue, LLC, seek judicial review under G.L.c. 30A and G.L.c. 231A, §1, of the Massachusetts Department of Revenue’s rejection of their Brownfields tax credit applications. They now move for judgment on the pleadings, arguing that the state DOR improperly denied their applications based on the unlawful use of a directive (Directive 13-4) issued by the Commissioner of Revenue. The Commissioner of Revenue cross moves for judgment on the pleadings. For the following reasons, the plaintiffs’ motions for judgment on the pleadings are ALLOWED and the defendant Commissioner’s cross motion for judgment on the pleadings is DENIED.
BACKGROUND
The Massachusetts Brownfields tax credit program became effective on August 5, 1998. See G.L.c. 62, §6(j) and G.L.c. 63, §38Q(f). In order to receive the tax credit, the statutes require eligible taxpayers or nonprofits to commence and diligently pursue an “environmental response” action, as well as achieve and maintain a “permanent solution” or “remedy operation” status. The program provides successful applicants with a tax credit for costs they incurred, on or after August 1, 1998, to further these projects. The credit originally only applied against a credit holder’s Massachusetts personal income and corporate excise tax liabilities; but the legislature has consistently and continuously extended the life of the credit through statutory amendments. The most recent of these amendments occurred in 2013, which extended the period of incurring costs to January 1, 2019, and the achievement of attaining “permanent solution” or “remedy operation” status to August 5, 2018.
In June 2006, the legislature expanded the scope of this credit to include nonprofit organizations and indeed, rendered earned credits transferable. Until 2013, the state DOR had approved applications submitted by nonprofit organizations regardless of whether their “permanent solution” or “remedy operation” statuses had been achieved before the 2006 amendment. The DOR similarly treated transfer applications.
On November 18, 2013, the state DOR formally issued Directive 13-4 to address “recent questions concerning applications for the [credit].” The directive stated that a nonprofit claimant’s tax year is the calendar year in which it submitted the required “permanent solution or remedy operation status” documentation to the DOR. It further explained that nonprofit and transfer applicants may not receive or transfer credits based on documentation submitted in a taxable year that commenced before the effective date of the 2006 amendment.
131 Willow Avenue, LLC is a limited liabilfiy company that redeveloped property located at that property address in Somerville, Massachusetts in 2005 and 2006. On December 21, 2006, it filed a “response action” outcome statement confirming the completion of its environmental remediation projects on the property. On December 31, 2013, 131 Willow submitted a credit transfer application to the state DOR which rejected it based on the directive. After a conference, the Commissioner issued a letter affirming DOR’s denial.
Northeastern University, Boston University and Wellesley College, all nonprofit higher education institutions in the Commonwealth, each incurred remediation costs between August 1998 and January 2006 to further projects for which they documented “permanent solutions” or “remedy operations.” They submitted these before June 24, 2006, the date of the 2006 amendment. The DOR issued the directive while the universities’ applications were pending. DOR rejected their applications, citing Directive 13-4. All three institutions requested conferences to further discuss the disposition of their applications. After such conferences, the Commissioner affirmed the DOR decision to deny their applications for tax credits.
*50 DISCUSSION
I. Standard of Review
The effect of a motion for judgment on the pleadings under Mass.R.Civ.P. 12(c) is to challenge the legal sufficiency of a complaint. Welch v. Sudbury Youth Soccer Ass’n, 453 Mass. 352, 353 (2009). “A motion for judgment on the pleadings is actually a motion to dismiss that argues that the complaint fails to state a claim upon which relief can be granted.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 625, n.7 (2008) (internal citations, quotations, and modifications omitted). When considering a motion to dismiss under Rule 12(b)(6), “items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.” Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000) (internal quotations and citations omitted). “[A]ll facts pleaded by the nonmoving party must be accepted as true.” Jarosz v. Palmer, 436 Mass. 526, 529-30 (2002); see also Minaya v. Massachusetts Credit Union Share Ins. Corp., 392 Mass. 904, 905 (1984).
II. Analysis
The universities and 131 Willow allege that the directive is unlawful and should not affect their tax credit and transfer applications, because the new restrictions directly contravene the plain language of the statute and indeed, DOR’s own seven years’ history of its interpretation. The Commissioner asks that this court defer to his interpretation of the statute. He contends that failing to do so would be irreconcilable with the statutory purpose, which is to encourage the implementation of environmentally-friendly programs, and allow taxpayers and nonprofits to benefit from programs created before the tax credit applied to them. Finally, the Commissioner argues that not reading in the limitation violates the traditional notion that statutes generally operate prospectively.[2]
Declaratory judgment is available under G.L.c. 231A where a party sets forth an actual controversy. Libertarian Ass’n of Mass. v. Sec’y of the Commonwealth, 462 Mass. 538, 546 (2012). “An actual controversy arises under our law where there is a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation.” Id. at 546-47 (internal quotations and citations are omitted). This requirement of G.L.c. 231A, §1 is to be liberally construed. Boston v. Keene Corp., 406 Mass. 301, 304 (1989).
Courts are “constrained to follow the plain language of a statute when its language is plain and unambiguous, and its application would not lead to an absurd result, or contravene the [legislature's clear intent.” Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82 (1999) (holding that the Commissioner erred by reading an additional requirement into the statute where the unambiguous and plain language of the statute did not suggest an intention to limit the credit in such a way); Fink v. Commissioner of Revenue, 71 Mass.App.Ct. 677, 685-86 (2008) (holding that the Appellate Tax Board was incorrect to read additional requirements into a statute where there was no evidence of a congressional intent to limit the tax exemption in that way).
The court has no right to “read into the statute a provision which the [legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose.” Id., quoting King v. Viscoloid Co., 219 Mass. 420, 425 (1914) (internal quotations and modifications omitted). If a statute is unambiguous, then courts should give effect to the legislature’s intent; however, where the language is sufficiently ambiguous to support more than one rational interpretation, it is for the court to determine whether an agency’s interpretation is reconcilable with the statute. Biogen IDEC MA, Inc. v. Treasurer & Receiver Gen., 454 Mass. 174, 186-87 (2009). The focus of this inquiry is “whether the agency’s regulation is the product of reasoned rule making.” Id. at 187.
G.L.c. 62C, §3, states that “regulations and rulings, not inconsistent with law, . . . [are] prima facie evidence of their proper interpretation!.]” (Italics added.) However, an agency’s application and interpretation of a statute is not binding on the courts. Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 515 (1975). For example, a court may, but is not required to, defer to a regulation that an agency adopted with the enactment of a statute, and which the agency consistently interpreted since that time. See Macys East, Inc. v. Commissioner of Revenue, 441 Mass. 797, 806 (2004); First Federal Sav. & Loan Assoc. v. State Tax Com., 372 Mass. 478, 485 (1977); Board of Educ., 368 Mass. at 516.
“An administrative interpretation developed during, or shortly before, the litigation in question is entitled to less weight than that of a long-standing . . . interpretation.” Rosing v. Teachers’ Ret. Sys., 458 Mass. 283, 290 (2010) (internal quotations and citations omitted). Moreover, “[wjhile a court will generally tend to give deference to an administrative agency in the realm of its expertise and experience, an incorrect interpretation of a statute by an administrative agency is not entitled to deference.” Fink, 71 Mass.App.Ct. at 686 (internal citations and quotations omitted). Courts have enforced the notion that consistent administrative practices and internally promulgated policies may also suggest an agency’s interpretation of a statute. See, e.g., Biogen IDEC MA, Inc., 454 Mass. at 186; Wellington v. Commissioner of Corps. & Taxation, 359 Mass. 448, 451-52 (1971).
Here, the language of both G.L.c. 62, §6(j), and G.L.c. 63, §38Q is unambiguous. Neither statute con *51 tains any special exclusion of nonprofit or transfer applicants which achieved their permanent solution or remedy operation statuses before the 2006 amendment. Nor do these statutes even suggest that distinctions exist between nonprofit organizations and taxpayers, or credit and transfer applications. The fact that the legislature chose not to impose limitations on applicants who became eligible after the 2006 amendment does not in itself make the statutes ambiguous.[3]
The Commissioner argues that it has the authority to interpret the word “achieved” as it appears in these statutes. However, there is no ambiguity for the Commissioner to resolve here. See Biogen IDEC MA, Inc., 454 Mass. at 186; Wellington, 359 Mass. at 452. An entity’s achievement of this “permanent solution or remedy operation status” simply opens the door to eligibility. The language surrounding the word “achieved” does not suggest that potential applicants are only eligible for the credit if they apply within a specific period after achieving this status. To the contrary, the limitations apparent in the statute indicate that this achievement is merely a threshold requirement. For example, the statutes additionally state: “[a]ny credit allowed under this subsection may be taken only after a response action outcome statement or remedy operation status submittal has been filed . ..” G.L.c. 63, §38Q(a); G.L.c. 62, §6(j)(l) (emphasis added). No time limitation is explicitly or implicitly apparent.
The Commissioner contends that he may also interpret the provision: “(a]ny taxpayer entitled to a credit under this subsection for any taxable year may carry over and apply to its tax liability for any subsequent taxable year, not to exceed 5 taxable years, the portion of those credits . . . which were not allowed . . ..” G.L.c. 62, §6(3) and G.L.c. 63, §38Q(f). He interprets this provision to mean that credits may only apply within the first five years a taxpayer or nonprofit is eligible for the credit. However, the plain language unambiguously limits only those who are already entitled to a credit.
Indeed, the Commissioner does not argue that any provisions concerning transfer applications are ambiguous because he cannot plausibly so claim. To the contrary, the directive is unreasonable because the legislature left no room for interpretation in either G.L.c. 63, §38Q, or G.L.c. 62, §6(j). See Biogen IDEC MA, Inc., 454 Mass. at 186; Wellington, 359 Mass. at 452.[4]
Directive 13-4 is unreasonable and DOR’s denial of the applications based on that directive was unlawful. It appears to be nothing more than a naked, confiscatory attempt by a state administrative agency to appropriate private property to fill government coffers.
ORDER
For these reasons, the plaintiffs Northeastern University, Trustees of Boston University, Wellesley College, and 131 Willow Avenue, LLC’s motions for judgment on the pleadings are ALLOWED and the defendant Commissioner of Revenue’s cross motion for judgment on the pleadings is DENIED.

 This argument is without merit, because the universities and 131 Willow do not attempt to apply the amendments retroactively. To the contrary, they argue that the statute, as amended, encompasses costs incurred before the date of the 2006 amendment.

 The 2006 amendment, in pertinent part, simply added nonprofit organizations to the eligible applicants and inserted provisions allowing credit holders to transfer to another their available credits. The legislature did not amend, however, the language describing the requirements to qualify for the credit or the limitations imposed on those who hold one. G.L.c. 62, §6(j), and G.L.c. 63, §38Q.

 ssuming arguendo that the statutes were ambiguous, the directive would not merit deference. See Macys East, Inc., 441 Mass. at 806; First Federal Sav. & Loan Ass’n of Boston, 372 Mass. at 485. The directive bears modest weight under the present circumstances, because DOR waited seven years before it attempted to provide any form of guidance. See First Federal Sav. &Loan Ass'n of Boston, 372 Mass. at 485. In the absence of formal direction, DOR’s officials adopted the administrative practice of treating nonprofit and transfer applicants in the same way they had treated applicants before the 2006 amendment. See Wellington, 359 Mass. at 451-52.